March 23, 2005

Honorable Robert B. Collings
U.S. Magistrate Judge
U.S. District Court
District of Massachusetts
1 Courthouse Way
Boston, MA 02210

    Re:    Jerome Weekes CR # 04-10385-MEL

Dear Judge Collings:

    Attached to this letter is an 18 page appraisal report of 62 Otis Street. Mr. Weekes's house has been appraised at $330,000.

    Thank you.

    Very truly yours,

    J. Thomas Kerner

cc:    William Connolly, AUSA

JTK:ms

# SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

File No. 13531.CVC

## SUBJECT

| Field | Value |
|---|---|
| Property Address | 62 OTIS STREET |
| City | BROCKTON |
| State | MA |
| Zip code | 02302-3501 |
| Legal Description | BOOK 28960 PAGE 219 |
| County | PLYMOUTH |
| Assessor's Parcel No. | 136-37 |
| Tax Year | 2005 |
| R.E. Taxes $ | 2,816.00 |
| Special Assessments $ | N/A |
| Neighborhood or Project Name | N/A |
| Map Reference | SMSA 1120 |
| Census Tract | 5113.01 |
| Borrower | N/A |
| Current Owner | WEEKS |
| Occupant | ☒ Owner  ☒ Tenant  ☐ Vacant |
| Property rights appraised | ☒ Fee Simple  ☐ Leasehold |
| Project Type | ☐ PUD  ☐ Condominium |
| HOA $ | /Mo. |
| Sales Price $ | N/A |
| Date of Sale | N/A |
| Description and $ amount of loan charges/concessions to be paid by seller | N/A |
| Lender/Client | MR. JEROME WEEKS |
| Address | 62 OTIS STREET, BROCKTON, MA |
| Appraiser | CARMEN V. CAPONE |
| Address | 1070B MASSACHUSETTS AVE, ARLINGTON, MA 02476 |

## NEIGHBORHOOD

| | | | | Single family housing | | Predominant 2-4 Family Occupancy | 2-4 family housing | |
|---|---|---|---|---|---|---|---|---|
| | | | Predominant Single Family Occupancy | PRICE $ (000) | AGE (yrs) | | PRICE $ (000) | AGE (yrs) |
| Location | ☒ Urban | ☐ Suburban | ☐ Rural | | | | | |
| Built up | ☒ Over 75% | ☐ 25-75% | ☐ Under 25% | Low 200 | 15 | ☐ Owner | Low 250 | 25 |
| Growth rate | ☐ Rapid | ☒ Stable | ☐ Slow | ☐ Owner | | | | |
| Property values | ☐ Increasing | ☒ Stable | ☐ Declining | ☐ Tenant | High 500 | 150+ | ☒ Tenant | High 500 | 150+ |
| Demand/supply | ☐ Shortage | ☒ In balance | ☐ Over supply | ☒ Vacant (0-5%) | Predominant 300 | 75+ | ☐ Vacant (0-5%) | Predominant 325 | 75+ |
| Marketing time | ☒ Under 3 mos. | ☐ 3-6 mos. | ☐ Over 6 mos. | ☐ Vacant (over 5%) | | | ☒ Vacant (over 5%) | | |

| Typical 2-4 family bldg. | Type WD.FRAME | No. stories 2-3 | No. units 2-4 | Age 95 yrs. | Present land use % | Land use change |
|---|---|---|---|---|---|---|
| Typical rents $ 500 to $ 1,800 | | ☐ Increasing ☒ Stable ☐ Declining | | | One family 20 | ☒ Not likely  ☐ Likely |
| Est. neighborhood apt. vacancy 4 % | | ☐ Increasing ☒ Stable ☐ Declining | | | 2-4 family 65 | ☐ In process to: |
| Rent controls ☐ Yes ☒ No ☐ Likely | If yes or likely, describe | | | | Multi-family 10 | |
| | | | | | Commercial 5 | |

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics:  SUBJECT LOOSELY BOUNDED BY ROUTE #28 TO THE WEST, TO THE NORTH BY ROUTE #27, TO THE EAST BY THE WHITMAN TOWN LINE AND THE WEST BRIDGEWATER TOWN LINE TO THE SOUTH.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): SUBJECT IS LOCATED ON OTIS STREET IN BROCKTON, AN URBAN COMMUNITY LOCATED 20 MILES SOUTH OF BOSTON. NO ADVERSE CONDITIONS NOTED THAT WOULD IMPACT UPON MARKETABILITY. SUBJECT IS LOCATED ON A RESIDENTIAL SIDE STREET. LOCAL SCHOOLS, SHOPPING, AND OTHER AMENITIES ARE ALL WITHIN A SHORT DISTANCE. GOOD ACCESS TO ROUTES 27, 123, AND ROUTE 24 FOR COMMUTING PURPOSES. EMPLOYMENT IN BROCKTON AND IN ADJACENT TOWNS. COMMERCIAL INFLUENCES LOCATED ALONG THE MAIN AVENUES ARE SUPPORT TYPE SERVICES, MARKET ACCEPTED AND NOT CONSIDERED ADVERSE TO MARKETABILITY.

The following available listings represent the most current, similar, and proximate competitive properties to the subject property in the subject neighborhood. This analysis is intended to evaluate the inventory currently on the market competing with the subject property in the subject neighborhood and recent price and marketing time trends affecting the subject property. (Listings outside the subject neighborhood are not considered applicable). The listing comparables can be the rental or sale comparables if they are currently for sale.

| ITEM | SUBJECT | COMPARABLE LISTING NO. 1 | COMPARABLE LISTING NO. 2 | COMPARABLE LISTING NO. 3 |
|---|---|---|---|---|
| Address | 62 OTIS STREET BROCKTON | 42 WESTON STREET BROCKTON | 47 ELM AVENUE BROCKTON | 85 DENTON STREET BROCKTON |
| Proximity to subject | | 1.08 miles | 0.89 miles | 0.88 miles |
| Listing price | $ N/A | ☒ Unf. ☐ Furn. $ 349,900 | ☒ Unf. ☐ Furn. $ 379,000 | ☒ Unf. ☐ Furn. $ 349,900 |
| Approximate GBA | 2,112 | 2,156 | 2,214 | 2,066 |
| Data source | INSPECTION | MLS/B&T | MLS/B&T | MLS/B&T |
| # Units/Tot. rms./BR/BA | 2 / 12 / 6 / 2 | 2 / 9 / 4 / 2 | 2 / 11 / 6 / 3 | 2 / 8 / 4 / 2 |
| Approximate year built | 1925 | 1900 | 1879 | 1884 |
| Approx. days on market | N/A | 47 DOM | 66 DOM | 57 DOM |

Comparison of listings to subject property: COMPS ARE AMONG THE BEST AVAILABLE LISTINGS IN NEIGHBORHOOD OF SIMILAR 2 FAMILY DWELLINGS.

Market conditions that affect 2-4 family properties in the subject neighborhood (including the above neighborhood indicators of growth rate, property values, demand/supply, and marketing time) and the prevalence and impact in the subject market area regarding loan discounts, interest buydowns and concessions, and identification of trends in listing prices, average days on market and any change over past year, etc.: LOAN DISCOUNTS AND BUYDOWNS ARE RARE IN THIS LOW INTEREST ENVIRONMENT. SALES CONCESSIONS ARE NOT UNCOMMON, BUT ARE NOT NEEDED TO COMPLETE A SALE. ACCORDING TO MARKET RESEARCH, TYPICAL MARKETING TIME FOR A PROPERLY PRICED AND MARKETED PROPERTIES IS BETWEEN 30-90 DAYS, ALTHOUGH SOME PROPERTIES ARE CLOSING IN LESS THAN 30 DAYS.

## SITE

| Field | Value |
|---|---|
| Dimensions | APPROX 66' +/- (SCALED) FRONTAGE x FAIRLY RECTANGULAR |
| Topography | LEVEL |
| Site area | 9,583 SF |
| Corner lot | ☐ No  ☒ Yes |
| Size | TYPICAL FOR AREA |
| Specific zoning classification and description | R3 (10,000SF/100' FRONTAGE MINIMUM) |
| Shape | RECTANGULAR |
| Zoning compliance | ☐ Legal  ☒ Legal nonconforming (Grandfathered use)  ☐ Illegal  ☐ No zoning |
| Drainage | APPEARS ADEQUATE |
| Highest and best use as improved: | ☒ Present use  ☐ Other use (explain) |
| View | RESIDENTIAL |
| | | Landscaping | TYPICAL |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private |
|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | PAVED | ☒ | ☐ |
| Gas | ☒ | | Curb/gutter | GRANITE | ☒ | ☐ |
| Water | ☒ | | Sidewalk | PAVED | ☒ | ☐ |
| Sanitary sewer | ☒ | | Street lights | OVERHEAD | ☒ | ☐ |
| Storm sewer | ☒ | | Alley | NONE | ☐ | ☐ |

Driveway PAVED
Apparent easements NONE APPARENT
FEMA Special Flood Hazard Area ☐ Yes ☒ No
FEMA Zone C    Map Date 12/26/1980
FEMA Map No. 250261-0005 C

## COMMENTS

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning, use, etc.): DUE TO LOT SIZE AND FRONTAGE BELOW CURRENT ZONING MINIMUM REQUIREMENTS, THE SUBJECT IS CONSIDERED LEGAL, NON-CONFORMING (GRANDFATHERED) USE. IF DESTROYED, THE PROPERTY COULD BE RECONSTRUCTED SUBJECT TO PERMITS AND CURRENT BUILDING CODES. NO APPARENT ADVERSE CONDITIONS, EASEMENTS, OR ENCROACHMENTS NOTED AT TIME OF INSPECTION.

# SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

## DESCRIPTION OF IMPROVEMENTS

**General description**
- Units/bldgs.: 2 / 1
- Stories: 2-3
- Type (det./att.): DETACHED
- Design (style): TAW
- Existing/proposed: EXISTING
- Under construction: NO
- Year Built: 1925
- Effective age (yrs.): 15

**Exterior description** (Materials/condition)
- Foundation: STONE/CNCRTE BLK
- Exterior walls: ASBESTOS-VINYL/AVG
- Roof surface: ASPHALT/AVG
- Gutters & dwnspts.: ALUMINUM/AVG
- Window type: THERMOPANE/AVG
- Storm sash/Screens: SCREENS
- Manufactured housing*: [ ] Yes [X] No
- *(Complies with the HUD Manufactured Housing Construction and Safety Standards.)

**Foundation**
- Slab: NONE
- Crawl space: NONE NOTED
- Sump Pump: NONE NOTED
- Dampness: NONE NOTED
- Settlement: NONE NOTED
- Infestation: NONE NOTED
- Basement: 100 % of 1st floor area
- Basement finish: 0%

**Insulation** (R-value if known)
- [ ] Roof
- [ ] Ceiling
- [ ] Walls
- [ ] Floor
- [ ] None
- Adequacy: TYP/UNVERIF
- Energy efficient items:

| Units | Level(s) | Foyer | Living | Dining | Kitchen | Den | Family rm. | Bedrooms | # Baths | Laundry | Other | Sq. ft./unit | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 1,2,3 | AREA | 1 | 1 | 1 | | | 3 | 1 | | | 1,056 | 1,056 |
| 1 | 1,2,3 | AREA | 1 | 1 | 1 | | | 3 | 1 | | | 1,056 | 1,056 |

Improvements contain: 12 Rooms; 6 Bedroom(s); 2 Bath(s); 2,112 Square feet of GROSS BUILDING AREA
GROSS BUILDING AREA (GBA) IS DEFINED AS THE TOTAL FINISHED AREA (INCLUDING COMMON AREAS) OF THE IMPROVEMENTS BASED UPON EXTERIOR MEASUREMENTS.

**Surfaces** (Materials/condition)
- Floors: LIN/HW/WW-AVG
- Walls: PLSTR-AVG
- Trim/Finish: WOOD-AVG
- Bath floor: VINYL-AVG
- Bath wainscot: FIBERGLASS-AVG
- Doors: WOOD-AVG

Fireplace(s): NONE  #

**Heating**
- Type: 2/FHW
- Fuel: GAS
- Condition: AVERAGE

**Cooling**
- Central: NONE
- Other: NONE
- Condition: N/A

**Kitchen equip.** (# / unit-cond.)
- Refrigerator:
- Range/oven: 2/AVERAGE
- Disposal:
- Dishwasher:
- Fan/hood: 2/AVERAGE
- Compactor:
- Washer/dryer:
- Microwave:
- Intercom:

**Attic**
- [ ] None
- [X] Stairs
- [ ] Drop stair
- [ ] Scuttle
- [X] Floor
- [X] Heated
- [X] Finished
- [ ] Unfinished
- IN GLA

**Car Storage** No. Cars
- Garage [ ]
- Carport [ ]
- Attached [ ]
- Detached [ ]
- Adequate [X]
- Inadequate [ ]
- Offstreet [X]
- None [ ]
- ASPHALT DRIVEWAY

Condition of the improvements, repairs needed, quality of construction, additional features, modernization, etc.: SUBJECT PROPERTY IS A 80 YEAR OLD, WOOD FRAME 2 FAMILY DWELLING WHICH IS IN OVERALL AVERAGE CONDITION FOR ITS AGE AND STYLE. SEPARATE UTILITIES; ELECTRIC BY CIRCUIT BREAKERS. KITCHENS AND BATHS HAVE BEEN UP-DATED AND ARE IN AVERAGE OVERALL CONDITION. THERE IS ALSO AN ASPHALT DRIVEWAY FOR OFF-STREET PARKING.

## ADDITIONAL COMMENTS

Depreciation (physical, functional, and external inadequacies, etc.): THE APPRAISER NOTED NO PHYSICAL, EXTERNAL, OR FUNCTIONAL OBSOLESENCE ON THE DATE OF INSPECTION. EACH UNIT HAS TWO SEPARATE MEANS OF EGRES AVAILABLE. FLOOR PLANS ARE TYPICAL OF THE AREA AND MARKET SEGMENT.

Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the immediate vicinity of the subject property: THERE ARE NO UNFAVORABLE ENVIRONMENTAL INFLUENCES MADE KNOWN TO OR OBSERVED BY THE APPRAISER, THAT WOULD BE ADVERSE TO MARKETABILITY. NOTE THAT THE APPRAISER IS NOT CONSIDERED AN EXPERT IN THE FIELD OF IDENTIFYING ENVIRONMENTAL HAZARDS, HIDDEN OR OTHERWISE, OR THE ENGINEERING NECESSARY TO UNCOVER SAME. THE APPRAISER ASSUMES NO RESPONSIBILITY FOR LEAD PAINT OR ANY ASBESTOS IN THE SUBJECT PROPERTY. SEE ENVIRONMENTAL DISCLAIMER.

## VALUATION ANALYSIS

| | | | | |
|---|---|---|---|---|
| ESTIMATED SITE VALUE | | | = $ | 100,000 |
| ESTIMATED REPRODUCTION COST-NEW OF IMPROVEMENTS: | | | | |
| 2,112 Sq. Ft. @ $ | 135.00 | = $ | | 285,120 |
| 1,062 Sq. Ft. @ $ | 15.00 | = $ | | 15,930 |
| Sq. Ft. @ $ | | = $ | | |
| Sq. Ft. @ $ | | = $ | | |
| Sq. Ft. @ $ | | = $ | | |
| | | = $ | | |
| | | = $ | | |
| | | = $ | | |
| | | = $ | | |
| APPLIANCES | | = $ | | 4,000 |
| Special Energy Efficient Items | | = $ | | |
| Porches, Patios, etc. | | = $ | | |
| Total Estimated Cost New | | = $ | | 305,050 |
| | Physical | Functional | External | |
| Less Depreciation | 25 | | | |
| | 76,263 | | = $ | 76,263 |
| Depreciated Value of Improvements | | | = $ | 228,787 |
| "As is" Value of Site Improvements | | | = $ | 5,000 |
| INDICATED VALUE BY COST APPROACH | | | = $ | 333,787 |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and, for HUD and VA, the estimated remaining economic life of the property): THE COST APPROACH IS NOT CONSIDERED A RELIABLE INDICATOR OF VALUE FOR THIS MARKET SEGMENT, AS BUYERS, SELLERS, AND BROKERS RELY STRICTLY ON COMPARABLE MARKET ACTIVITY AND BECAUSE DEPRECIATION ESTIMATES VARY WIDELY. COST FIGURES DERIVED FROM COST GUIDES AND APPRAISER'S KNOWLEDGE OF LOCAL BUILDERS COSTS. DEPRECIATION CALCULATED USING THE AGE/LIFE METHOD BASED UPON OBSERVED CONDITION. VALUES HAVE DECLINED BELOW REPLACEMENT COST OVER THE LAST SEVERAL YEARS.

SEE BUILDING SKETCH FOR MEASUREMENTS AND CALCULATIONS. TOTAL GLA = 2,112/SF

ESTIMATED REMAINING ECONOMIC LIFE = 45 YEARS

# SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

At least three rental comparables should be reported and analyzed in this section. The rental comparables should represent the most current rental information on properties as similar and proximate to the subject property as possible. (This comparison is based on current rental data, therefore, the rental comparables typically are not the same comparables used in the sales comparison analysis.) The appraisal report should assure the reader that the units and properties selected as comparables are comparable to the subject property (both the units and the overall property) and accurately represent the rental market for the subject property (unless otherwise stated within the report).

| ITEM | SUBJECT | COMPARABLE RENTAL NO. 1 | COMPARABLE RENTAL NO. 2 | COMPARABLE RENTAL NO. 3 |
|---|---|---|---|---|
| Address | 62 OTIS STREET BROCKTON | 9 WELLINGTON PLACE BROCKTON | 175 DOVER STREET BROCKTON | 168 MARKET STREET BROCKTON |
| Proximity to subject | | 0.45 miles | 0.71 miles | 1.29 miles |
| Lease dates (if available) | TAW | TAW | TAW | TAW |
| Rent survey date | PRESENT | PRESENT | PRESENT | PRESENT |
| Data source | INSPECTION BROKER/B&T/ASS | MLS/B&T/ASSESSOR | MLS/B&T/ASSESSOR | MLS/B&T/ASSESSOR |
| Rent concessions | NONE NOWN | NONE KNOWN | NONE KNOWN | NONE KNOWN |
| Description of property-units, design, appeal, age, vacancies, and conditions | No. Units 2  No. Vac. 0  Yr. Blt.: 1925  WOOD FRAME  NO VACANCIES  AVG LOCATION  AVG CONDITION | No. Units 2  No. Vac. 0  Yr. Blt.: 1885  WOOD FRAME  NO VACANCIES  AVERAGE LOCATION  AVERAGE CONDITION | No. Units 2  No. Vac. 0  Yr. Blt.: 1925  WOOD FRAME  NO VACANCIES  AVERAGE LOCATION  AVERAGE CONDITION | No. Units 2  No. Vac. 0  Yr. Blt.: 1900  WOOD FRAME  NO VACANCIES  AVERAGE LOCATION  AVERAGE CONDITION |

Individual unit breakdown:

| | Rm. Count (Tot/Br/Ba) | Size Sq. Ft. | | Rm. Count (Tot/Br/Ba) | Size Sq. Ft. | Total Monthly Rent | Rm. Count (Tot/Br/Ba) | Size Sq. Ft. | Total Monthly Rent | Rm. Count (Tot/Br/Ba) | Size Sq. Ft. | Total Monthly Rent |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 6 / 3 / 1 | 1,056 | | 3 / 1 / 1 | 675 | 850 | 6 / 3 / 1 | 1,325 | 1,100 | 5 / 3 / 1 | 880 | 1,400 |
| | 6 / 3 / 1 | 1,056 | | 3 / 1 / 1 | 675 | 850 | 6 / 3 / 1 | 1,325 | 1,100 | 5 / 3 / 1 | 900 | 1,400 |

| | SUBJECT | COMP 1 | COMP 2 | COMP 3 |
|---|---|---|---|---|
| Utilities, furniture, and amenities included in rent | UNFURNISHED  WATER/SEWER INCLUDED. ALL OTHER UTILITIES ARE SEPARATE. | UNFURNISED  WATER/SEWER INCLUDED IN THE RENT. ALL OTHER UTILITIES ARE SEPARATE. | UNFURNISHED  WATER/SEWER INCLUDED IN THE RENT. ALL OTHER UTILITIES ARE SEPARATE. | UNFURNISHED  WATER/SEWER INCLUDED IN THE RENT. ALL OTHER UTILITIES ARE SEPARATE. |
| Functional utility, basement, heating/cooling, project amenities, etc. | AVERAGE FUNCTIONAL UTILITY  NO A.C.  YARD AREA  DRIVEWAY | AVG. FUNC. UTILITY  NO A.C.  PORCHES  UNFINISHED BASEMENT  DRIVEWAY | AVG. FUNC. UTILITY  NO A.C.  PORCHES  UNFINISHED BASEMENT  DRIVEWAY | AVG. FUNC. UTILITY  NO A.C.  PORCHES  UNFINISHED BASEMENT  DRIVEWAY |

Analysis of rental data and support for estimated market rents for the individual subject units (including the adjustments used, the adequacy of comparables, rental concessions, etc.)
RENTAL COMPARABLES AMONG THE BEST VERIFIABLE ON THE DATE OF INSPECTION IN PROXIMITY, SIZE AND APPEAL. RENTAL COMPS REFLECT THE CURRENT RENTAL MARKET. RENTAL CONCESSIONS ARE NOT COMMON IN THE SUBJECT'S MARKET SEGMENT. COMPS ADEQUATELY SUPPORT RENT ESTIMATES.

**Subject's rent schedule**  The rent schedule reconciles the applicable indicated monthly market rents to the appropriate subject unit, and provides the estimated rents for the subject property. The appraiser must review the rent characteristics of the comparable sales to determine whether estimated rents should reflect actual or market rents. For example, if actual rents were available on the sales comparables and used to derive the gross rent multiplier (GRM), actual rents for the subject should be used. If market rents were used to construct the comparables' rents and derive the GRM, market rents should be used. The total gross estimated rent must represent rent characteristics consistent with the sales comparable data used to derive the GRM. The total gross estimated rent is not adjusted for vacancy.

| | LEASES | | | ACTUAL RENTS | | | ESTIMATED RENTS | | |
|---|---|---|---|---|---|---|---|---|---|
| Unit | Lease Date Begin | End | No. Units Vacant | Per Unit Unfurnished | Per Unit Furnished | Total Rents | Per Unit Unfurnished | Per Unit Furnished | Total Rents |
| 1 | TAW | | 0 | $ 1,200 | $ | $ 1,200 | $ 1,200 | $ | $ 1,200 |
| 1 | OWNER | | 0 | N/A | | | 1,200 | | 1,200 |
| 2 | | | | | | $ 1,200 | | | $ 2,400 |

Other monthly income (itemize) NONE                                                       $
Vacancy:  Actual last year UNK %   Previous year UNK %   Estimated: 4 %  $ 1,152  Annually     **Total gross estimated rent** $ 2,400
Utilities included in estimated rents: ☐ Electric  ☒ Water  ☒ Sewer  ☐ Gas  ☐ Oil  ☒ Trash collection  ☐

Comments on the rent schedule, actual rents, estimated rents (especially regarding differences between actual and estimated rents), utilities, etc.: RENTS ARE A COMBINATION OF ACTUAL AND ESTIMATED. RENTAL RATE IS SUPPORTED, BASED ON SIMILAR UNITS IN THE AREA. RENTAL CONCESSIONS ARE NOT TYPICAL FOR THIS TYPE OF DWELLING IN THIS MARKET SEGMENT.

APPRAISER NOTES THAT UNIT #1 IS RENTED AT MARKET AND UNIT #2 IS OWNER OCCUPIED .

# SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT

The undersigned has recited three recent sales of properties most similar and proximate to the subject property and has described and analyzed these in this analysis. If there is a significant variation between the subject and comparable properties, the analysis includes a dollar adjustment reflecting the market reaction to those items or an explanation supported by the market data. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the adjusted sales price of the comparable property; if a significant item in the comparable property is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the adjusted sales price of the comparable property. **[(1) Sales Price / Gross Monthly Rent]**

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| Address | 62 OTIS STREET BROCKTON | 510 CRESCENT STREET BROCKTON | | 514 CRESCENT STREET BROCKTON | | 325 CRESCENT STREET BROCKTON | |
| Proximity to subject | | 0.77 miles | | 0.77 miles | | 0.33 miles | |
| Sales price | $ N/A | ☒ Unf. ☐ Furn. $ 320,000 | | ☒ Unf. ☐ Furn. $ 335,000 | | ☒ Unf. ☐ Furn. $ 344,000 | |
| Sales price per GBA | $ 0.00 | $ 132.67 | | $ 137.97 | | $ 192.72 | |
| Gross monthly rent | $ 2,400.00 | $ 2,000.00 | | $ 2,400.00 | | $ 2,000.00 | |
| Gross mo. rent mult. (1) | 0.00 | 160.00 | | 139.58 | | 172.00 | |
| Sales price per unit | $ N/A | $ 160,000 | | $ 167,500 | | $ 172,000 | |
| Sales price per room | $ N/A | $ 35,556 | | $ 33,500 | | $ 34,400 | |
| Data and/or Verification Sources | INSPECTION MLS/B&T/ASS | MLS, B&T, ASSESSOR | | MLS, B&T, ASSESSOR | | MLS, B&T, ASSESSOR | |
| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or financing concessions | | NONE KNOWN | | NONE KNOWN | | NONE KNOWN | |
| Date of sale/time | | 2/2/05 | | 9/30/04 | | 12/2/04 | |
| Location | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 9,583 SF | 6,534 SF | | 6,970 SF | | 8,712 SF | |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design and appeal | 2 FAMILY/AVG | 2 FAMILY/AVG | | 2 FAMILY/AVG | | 2 FAMILY/AVG | |
| Quality of construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Age | 80 YEARS | 80 YEARS | | 118 YEARS | | 117 YEARS | |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Gross Building Area | 2,112 Sq. ft. | 2,412 Sq. ft. | -6,000 | 2,428 Sq. ft. | -6,320 | 1,785 Sq. ft. | +6,540 |
| Unit breakdown | 1 unit: 6 Tot / 3 Br / 1 Ba / 0 Vac; 1 unit: 6 Tot / 3 Br / 1 Ba / 0 Vac | 1 unit: 5 Tot / 2 Br / 1 Ba / 0 Vac; 1 unit: 4 Tot / 2 Br / 1 Ba / 0 Vac | | 1 unit: 5 Tot / 3 Br / 1 Ba / 0 Vac; 1 unit: 5 Tot / 3 Br / 1 Ba / 0 Vac | | 1 unit: 7 Tot / 3 Br / 1 Ba / 0 Vac; 1 unit: 3 Tot / 1 Br / 1 Ba / 0 Vac | |
| Basement description | FULL BSMNT | FULL BSMNT | | FULL BSMNT | | FULL BSMNT | |
| Functional utility | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Heating/cooling | SEPARATE | SEPARATE | | SEPARATE | | SEPARATE | |
| Parking on/off site | DRIVEWAY | 2 CAR GARAGE | -4,000 | DRIVEWAY | | 2 CAR GARAGE | -4,000 |
| Project amenities and fee (If applicable) | PORCH/YARD NO FPS | PORCH/YARD NO FPS | | PORCH/YARD NO FPS | | PORCH/YARD NO FPS | |
| KITCHENS & BATHS | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Net Adj. (total) | | ☐ + ☒ - $ | 10,000 | ☐ + ☒ - $ | 6,320 | ☒ + ☐ - $ | 2,540 |
| Adjusted sales price of comparable | | Net 3.1 % Gross 4.7 % $ | 310,000 | Net 1.9 % Gross 0.4 % $ | 328,680 | Net 0.7 % Gross 3.0 % $ | 346,540 |

Comments on sales comparison (including reconciliation of all indicators of value as to consistency and relative strength and evaluation of the typical investor's/purchaser's motivation in that market):  See attached addenda.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data Source for prior sales within year of appraisal | $315,000.00 8/30/04 B & T ONLINE/MLS | NO PRIOR SALE IN PAST 36 MONTHS | NO PRIOR SALE IN PAST 36 MONTHS | NO PRIOR SALE IN PAST 36 MONTHS |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal:  SUBJECT NOT CURRENTLY LISTED FOR SALE. SUBJECT SOLD WITHIN THE PAST YEAR AS NOTED. NO SALE OF ANY COMPARABLE WITHIN 3 YEARS OF DATES CITED UNLESS OTHERWISE NOTED, PER BANKER & TRADESMAN ONLINE.

Total gross monthly estimated rent $ 2,400  X gross rent multiplier (GRM) 139.58  = $ 334,992  INDICATED VALUE BY INCOME APPROACH
Comments on income approach (including expense ratios, if available, and reconciliation of the GRM)  GRM REFLECT'S CURRENT MARKET CONDITIONS & IS DERIVED FROM SIMILAR SALES. EXPENSE RATIOS NOT DEVELOPED FOR THIS MARKET SEGMENT.

| INDICATED VALUE BY SALES COMPARISON APPROACH | $ 329,000 |
|---|---|
| INDICATED VALUE BY INCOME APPROACH | $ 334,992 |
| INDICATED VALUE BY COST APPROACH | $ 333,787 |

This appraisal is made  ☒ "as is"  ☐ subject to the repairs, alterations, inspections, or conditions listed below  ☐ subject to completion per plans and specifications.
Comments and conditions of appraisal:  APPRAISAL IS MADE "AS IS" WITH NO REPAIRS OR CONDITIONS WARRANTED.

Final reconciliation:  MOST EMPHASIS ON THE SALES COMPARISON APPROACH, AS IT BEST REFLECTS THE ACTIONS AND INTENTIONS OF TYPICAL BUYERS AND SELLERS IN THE MARKET. ADDITIONAL SUPPORT FROM THE INCOME AND COST APPROACHES TO VALUE.

The purpose of this appraisal is to estimate the market value of the real property that is the subject of this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 6/93 ).
I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF  3/19/05
(WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 329,000 .

APPRAISER:
Signature: [signed]
Name  CARMEN V. CAPONE
Date Report Signed  3/22/05
State Certification #  RES CERT 4631  State MA
Or State License #  State

SUPERVISORY APPRAISER (ONLY IF REQUIRED):
Signature: [signed]
Name  ANDREW M POCKROSE
Date Report Signed  3/22/05
State Certification #  RES CERT 616  State MA
Or State License #  State
☐ Did  ☒ Did Not Inspect Property

## Subject Photo Page

| Borrower/Client | N/A | | | |
|---|---|---|---|---|
| Property Address | 62 OTIS STREET | | | |
| City BROCKTON | County PLYMOUTH | State MA | Zip Code 02302-3501 | |
| Lender MR. JEROME WEEKS | | | | |



**Subject Front**
62 OTIS STREET
Sales Price:   N/A
GBA:   2,112
Age:   80 YEARS



**Subject Rear**



**Subject Street**

**Operating Income Statement**
**One- to Four-Family Investment Property and Two- to Four-Family Owner-Occupied Property**

Property Address

Street **62 OTIS STREET**    City **BROCKTON**    State **MA**    Zip Code **02302-3501**

**General Instructions:** This form is to be prepared jointly by the loan applicant, the appraiser, and the lender's underwriter. The applicant must complete the following schedule indicating each unit's rental status, lease expiration date, current rent, market rent, and the responsibility for utility expenses. Rental figures must be based on the rent for an "unfurnished" unit.

| | Currently Rented | Expiration Date | Current Rent Per Month | Market Rent Per Month | Utility Expense | Paid By Owner | Paid By Tenant |
|---|---|---|---|---|---|---|---|
| Unit No. 1 | Yes ☒ No ☐ | TAW | $ 1,200 | $ 1,200 | Electricity | ☐ | ☒ |
| Unit No. 2 | Yes ☒ No ☐ | OWNER | $ N/A | $ 1,200 | Gas | ☐ | ☒ |
| Unit No. 3 | Yes ☐ No ☐ | | $ | $ | Fuel Oil | ☐ | ☐ |
| Unit No. 4 | Yes ☐ No ☐ | | $ | $ | Fuel (Other) | ☐ | ☒ |
| Total | | | $ 1,200 | $ 2,400 | Water/Sewer | ☒ | ☐ |
| | | | | | Trash Removal | ☒ | ☐ |

The applicant should complete all of the income and expense projections and for existing properties provide actual year-end operating statements for the past two years (for new properties the applicant's projected income and expenses must be provided). This Operating Income Statement and any previous operating statements the applicant provides must then be sent to the appraiser for review, comment, and/or adjustments next to the applicant's figures (e.g. Applicant/Appraiser 288/300). If the appraiser is retained to complete the form instead of the applicant, the lender must provide to the appraiser the aforementioned operating statements, mortgage insurance premium, HOA dues, leasehold payments, subordinate financing, and/or any other relevant information as to the income and expenses of the subject property received from the applicant to substantiate the projections. The underwriter should carefully review the applicant's/appraiser's projections and the appraiser's comments concerning those projections. The underwriter should make any final adjustments that are necessary to more accurately reflect any income or expense items that appear unreasonable for the market. (Real estate taxes and insurance on these types of properties are included in PITI and not calculated as an annual expense item.) Income should be based on the current rents, but should not exceed market rents. When there are no current rents because the property is proposed, new, or currently vacant, market rents should be used.

**Annual Income and Expense Projection for Next 12 months**

| | By Applicant/Appraiser | Adjustments by Lender's Underwriter |
|---|---|---|
| **Income (Do not include income for owner-occupied units)** | | |
| Gross Annual Rental (from unit(s) to be rented) | $ 14,400 | $ |
| Other Income (include sources) | + | + |
| Total | $ 14,400 | $ |
| Less Vacancy/Rent Loss | − 1,344 ( 4 %) | − ( %) |
| Effective Gross Income | $ 13,056 | $ |
| | | |
| **Expenses (Do not include expenses for owner-occupied units)** | | |
| Electricity | | |
| Gas | | |
| Fuel Oil | | |
| Fuel (Type - _____ ) | | |
| Water/Sewer | 1,000 | |
| Trash Removal | | |
| Pest Control | | |
| Other Taxes or Licenses | | |
| Casual Labor | | |
|     This includes the costs for public area cleaning, snow removal, etc., even though the applicant may not elect to contract for such services. | | |
| Interior Paint/Decorating | 100 | |
|     This includes the costs of contract labor and materials that are required to maintain the interiors of the living unit. | | |
| General Repairs/Maintenance | 100 | |
|     This includes the costs of contract labor and materials that are required to maintain the public corridors, stairways, roofs, mechanical systems, grounds, etc. | | |
| Management Expenses | | |
|     These are the customery expenses that a professional management company would charge to manage the property. | | |
| Supplies | 100 | |
|     This includes the costs of items like light bulbs, janitorial supplies, etc. | | |
| Total Replacement Reserves - See Schedule on Pg. 2 | 600 | |
| Miscellaneous | | |
| | | |
| **Total Operating Expenses** | $ 1,900 | $ |

Freddie Mac    Fannie Mae
Form 998 Aug 88    Form 216 Aug 88

## Replacement Reserve Schedule

Adequate replacement reserves must be calculated regardless of whether actual reserves are provided for on the owner's operating statements or are customary in the local market.  This represents the total average yearly reserves.  Generally, all equipment and components that have a remaining life of more than one year-such as refrigerators, stoves, clothes washers/dryers, trash compactors, furnaces, roofs, and carpeting, etc. - should be expensed on a replacement cost basis.

| Equipment | Replacement Cost | Remaining Life | | | | By Applicant/Appraiser | Lender Adjustments |
|---|---|---|---|---|---|---|---|
| Stoves/Ranges | @ $ 350 ea. / | 15 Yrs. x | 1 | Units = | $ | 23.33 | $ |
| Refrigerators | @ $ ea. / | Yrs. x | | Units = | $ | | $ |
| Dishwashers | @ $ ea. / | Yrs. x | | Units = | $ | | $ |
| A/C Units | @ $ ea. / | Yrs. x | | Units = | $ | | $ |
| C. Washer/Dryers | @ $ ea. / | Yrs. x | | Units = | $ | | $ |
| HW Heaters | @ $ 400 ea. / | 15 Yrs. x | 1 | Units = | $ | 26.67 | $ |
| Furnace(s) | @ $ 5,000 ea. / | 20 Yrs. x | 1 | Units = | $ | 250.00 | $ |
| (Other) | @ $ ea. / | Yrs. x | | Units = | $ | | $ |
| Roof | @ $ 6,000 / | 20 Yrs. x | One Bldg. = | | $ | 300 | $ |

**Carpeting** (Wall to Wall)                                                 Remaining Life

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| (Units) | Total Sq. Yds. @ | $ Per Sq. Yd. / | Yrs. | = | $ | | $ |
| (Public Areas) | Total Sq. Yds. @ | $ Per Sq. Yd. / | Yrs. | = | $ | | $ |

**Total Replacement Reserves. (Enter on Pg. 1)**                            $   600    $

## Operating Income Reconciliation

$ 13,056 − $ 1,900 = $ 11,156 / 12 = $ 930
Effective Gross Income    Total Operating Expenses    Operating Income            Monthly Operating Income

$ 930 − $ = $
Monthly Operating Income    Monthly Housing Expense    Net Cash Flow

(Note: Monthly Housing Expense includes principal and interest on the mortgage, hazard insurance premiums, real estate taxes, mortgage insurance premiums, HOA dues, leasehold payments, and subordinate financing payments.)

Underwriter's instructions for 2-4 Family Owner-Occupied Properties

- If Monthly Operating Income is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003.  If Monthly Operating Income is a negative number, it must be included as a liability for qualification purposes.

- The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total Monthly Housing Expense for the **subject property** to the borrower's stable monthly income.

Underwriter's instructions for 1-4 Family Investment Properties

- If Net Cash Flow is a positive number, enter as "Net Rental Income" in the "Gross Monthly Income" section of Freddie Mac Form 65/Fannie Mae Form 1003.  If Net Cash Flow is a negative number, it must be included as a liability for qualification purposes.

- The borrower's monthly housing expense-to-income ratio must be calculated by comparing the total monthly housing expense for the borrower's **primary residence** to the borrower's stable monthly income.

Appraiser's Comments  (Including sources for data and rationale for the projections)
RENTAL RATES ARE ACTUAL, SUPPORTED BY APPRAISERS MARKET RESEARCH OF SIMILAR UNITS IN THE AREA.
EXPENSES ARE ESTIMATED BASED UPON SIMILAR 2 FAMILY STRUCTURES OF COMPARABLE GROSS LIVING AREA.

| CARMEN V. CAPONE | *Carmen V. Capone* | 3/22/05 |
|---|---|---|
| Appraiser Name | Appraiser Signature | Date |

Underwriter's Comments and Rationale for Adjustments

| | | |
|---|---|---|
| Underwriter Name | Underwriter Signature | Date |

Freddie Mac                                                                                                        Fannie Mae
Form 998 Aug 88                                                                                                  Form 216 Aug 88

## Comparable Photo Page

| | | | |
|---|---|---|---|
| Borrower/Client | N/A | | |
| Property Address | 62 OTIS STREET | | |
| City BROCKTON | County PLYMOUTH | State MA | Zip Code 02302-3501 |
| Lender MR. JEROME WEEKS | | | |



### Comparable 1
510 CRESCENT STREET
Sales Price: 320,000
GBA: 2,412
Age: 80 YEARS



### Comparable 2
514 CRESCENT STREET
Sales Price: 335,000
GBA: 2,428
Age: 118 YEARS



### Comparable 3
325 CRESCENT STREET
Sales Price: 344,000
GBA: 1,785
Age: 117 YEARS

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

* Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:**  The Appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8. I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**  If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

**ADDRESS OF PROPERTY APPRAISED:** 62 OTIS STREET, BROCKTON, MA 02302-3501

**APPRAISER:**
Signature: _Carmen V. Capone_
Name: CARMEN V. CAPONE
Date Signed: 3/22/05
State Certification #: RES CERT 4631
or State License #:
State: MA
Expiration Date of Certification or License: 2/14/07

**SUPERVISORY APPRAISER (only if required):**
Signature: _Andrew M Rockrose_
Name: ANDREW M ROCKROSE
Date Signed: 3/22/05
State Certification #: RES CERT 616
or State License #:
State: MA
Expiration Date of Certification or License: 5/3/05

☐ Did    ☒ Did Not Inspect Property

Freddie Mac Form 439 6-93                Page 2 of 2                Fannie Mae Form 1004B 6-93

Form ACR — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

| | |
|---|---|
| Borrower N/A | File No. 13531.CVC |
| Property Address 62 OTIS STREET | |
| City BROCKTON    County PLYMOUTH    State MA    Zip Code 02302-3501 | |
| Lender MR. JEROME WEEKS | |

## APPRAISAL AND REPORT IDENTIFICATION

**This appraisal conforms to one of the following definitions:**

☒ Complete Appraisal (The act or process of estimating value, or an opinion of value, performed without invoking the Departure Rule.)

☐ Limited Appraisal (The act or process of estimating value, or an opinion of value, performed under and resulting from invoking the Departure Rule.)

**This report is one of the following types:**

☐ Self Contained (A written report prepared under Standards Rule 2-2(a) of a Complete or Limited Appraisal performed under STANDARD 1.)

☒ Summary (A written report prepared under Standards Rule 2-2(b) of a Complete or Limited Appraisal performed under STANDARD 1.)

☐ Restricted (A written report prepared under Standards Rule 2-2(c) of a Complete or Limited Appraisal performed under STANDARD 1 for client use only.)

### Comments on Standards Rule 2-3

I certify that, to the best of my knowledge and belief:

The statements of fact contained in this report are true and correct.

The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and are my personal, impartial, and unbiased professional analyses, opinions and conclusions.

I have no (or the specified) present or prospective interest in the property that is the subject of this report, and no (or the specified) personal interest with respect to the parties involved.

I have no bias with respect to the property that is the subject of this report or the parties involved with this assignment.

My engagement in this assignment was not contingent upon developing or reporting predetermined results.

My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

My analyses, opinions and conclusions were developed and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

I have (or have not) made a personal inspection of the property that is the subject of this report.

### Comments on Appraisal and Report Identification

Note any departures from Standards Rules 1-2, 1-3, 1-4, plus any USPAP-related issues requiring disclosure:

**APPRAISER:**
Signature: *(signed)*
Name: CARMEN V. CAPONE
Date Signed: 3/22/05
State Certification #: RES CERT 4631
or State License #:
State: MA
Expiration Date of Certification or License: 2/14/07

**SUPERVISORY APPRAISER (only if required):**
Signature: *(signed)*
Name: ANDREW M POCKROSE
Date Signed: 3/22/05
State Certification #: RES CERT 616
or State License #:
State: MA
Expiration Date of Certification or License: 5/3/05

☐ Did    ☒ Did Not Inspect Property

## Location Map

| | | | |
|---|---|---|---|
| Borrower/Client | N/A | | |
| Property Address | 62 OTIS STREET | | |
| City BROCKTON | County PLYMOUTH | State MA | Zip Code 02302-3501 |
| Lender MR. JEROME WEEKS | | | |

File No. 18581.CVC  Page #12



Form MAP.LOC — "TOTAL for Windows" appraisal software by a la mode, inc. — 1-800-ALAMODE

## SMALL RESIDENTIAL INCOME PROPERTY APPRAISAL REPORT
## MARKET DATA ANALYSIS

| ITEM | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| Address | 62 OTIS STREET BROCKTON | 19 TYLER STREET BROCKTON | | | | | |
| Proximity to subject | | 0.57 miles | | | | | |
| Sales price | $ N/A | ☒ Unf. ☐ Furn. $ 342,000 | | ☐ Unf. ☐ Furn. $ | | ☐ Unf. ☐ Furn. $ | |
| Sales price per GBA | $ 0.00 | $ 214.96 | | $ | | $ | |
| Gross monthly rent | $ 2,400.00 | $ 2,200.00 | | $ | | $ | |
| Gross mo. rent mult. (1) | 0.00 | 155.45 | | | | | |
| Sales price per unit | $ N/A | $ 171,000 | | $ | | $ | |
| Sales price per room | $ N/A | $ 42,750 | | $ | | $ | |
| Data and/or Verification Sources | INSPECTION MLS/B&T/ASS | MLS, B&T, ASSESSOR | | | | | |
| ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(−) $ Adjustment | DESCRIPTION | +(−) $ Adjustment | DESCRIPTION | +(−) $ Adjustment |
| Sales or financing concessions | | NONE KNOWN | | | | | |
| Date of sale/time | | 2/10/05 | | | | | |
| Location | AVERAGE | AVERAGE | | | | | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | | | | |
| Site | 9,583 SF | 3,485 SF | | | | | |
| View | RESIDENTIAL | RESIDENTIAL | | | | | |
| Design and appeal | 2 FAMILY/AVG | 2 FAMILY/AVG | | | | | |
| Quality of construction | AVERAGE | AVERAGE | | | | | |
| Age | 80 YEARS | 105 YEARS | | | | | |
| Condition | AVERAGE | AVERAGE | | | | | |
| Gross Building Area | 2,112 Sq. ft. | 1,591 Sq. ft. | +10,420 | Sq. ft. | | Sq. ft. | |
| Unit breakdown | 1/6/3/1/0; 1/6/3/1/0 | 1/4/2/1/0; 1/4/2/1/0 | | | | | |
| Basement description | FULL BSMNT | FULL BSMNT | | | | | |
| Functional utility | TYPICAL | TYPICAL | | | | | |
| Heating/cooling | SEPARATE | SEPARATE | | | | | |
| Parking on/off site | DRIVEWAY | DRIVEWAY | | | | | |
| Project amenities and fee (If applicable) | PORCH/YARD NO FPS | PORCH/YARD NO FPS | | | | | |
| KITCHENS & BATHS | AVERAGE | AVERAGE | | | | | |
| Net Adj. (total) | | ☒ + ☐ − $ | 10,420 | ☐ + ☐ − $ | | ☐ + ☐ − $ | |
| Adjusted sales price of comparable | | Net 3.0 % Gross 2.7 % $ | 352,420 | Net % Gross % $ | | Net % Gross % $ | |
| Date, Price and Data Source for prior sales within year of appraisal | $315,000.00 8/30/04 B & T ONLINE/MLS | NO PRIOR SALE IN PAST 36 MONTHS | | | | | |

Comments:  COMPARABLE #4 PROVIDED AS ADDITIONAL SUPPORT OF VALUE.

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 62 OTIS STREET |
| City BROCKTON | County PLYMOUTH    State MA    Zip Code 02302-3501 |
| Lender | MR. JEROME WEEKS |



### Comparable 4
19 TYLER STREET
Sales Price:   342,000
GBA:           1,591
Age:           105 YEARS

### Comparable 5
Sales Price:
GBA:
Age:

### Comparable 6
Sales Price:
GBA:
Age:

## Supplemental Addendum

| | |
|---|---|
| Borrower/Client   N/A | File No.   13531.CVC |
| Property Address   62 OTIS STREET | |
| City   BROCKTON          County   PLYMOUTH          State   MA | Zip Code   02302-3501 |
| Lender   MR. JEROME WEEKS | |

THIS IS A SUMMARY APPRAISAL REPORT, INTENDED FOR MORTGAGE PURPOSES FOR THE EXCLUSIVE USE OF THE CLIENT AND/OR ITS ASSIGNS. ANY OTHER USE OF THIS REPORT WILL RENDER THE ESATIMATE OF VALUE NULL & VOID.

**SITE COMMENTS**
DUE TO INSUFFICIENT SITE SIZE AND FRONTAGE, SUBJECT IS CLASSIFIED AS LEGAL NON-CONFORMING USE. IN THE EVENT THAT SUBJECT IS DESTROYED IT CAN BE REBUILT WITH THE PROPER PERMITS AND APPROVALS.  SUBJECT SITE ALSO HAS SOME FRONTAGE ON A BROOK TO THE REAR OF THE PROPERTY.

• **Small Income: Sales Comparison Analysis**
GLA  ADJUSTED AT $20/SF OVER 100/SF OF DIFFERENCE. NO TIME ADJUSTMENT WARRANTED AS COMPARABLES ARE RECENT SALES AND DEMONSTRATE STABLE CURRENT MARKET CONDITIONS. GARAGES ADJUSTED AT $2000 PER BAY. ALL SALES CONSIDERED EQUALLY IN THE ANALYSIS WITH THE FINAL ESTIMATE OF VALUE TOWARDS THE MIDDLE OF THE ADJUSTED RANGE, ROUNDED.

**CONDITION OF THE APPRAISAL**
THE APPRAISAL IS MADE "AS IS" AS SEEN  AT THE TIME OF INSPECTION. NO ACCESS WAS PERMITTED TO THE TENANTED UNIT, ONLY THE OWNERS UNIT WAS INSPECTED. IT IS ASSUMED FOR PURPOSES OF THIS REPORT THAT THE TENANTED UNIT IS IN ATLEAST AVERAGE OVERALL CONDITION. IF THIS IS FOUND NOT TO BE THE CASE THE VALUE COULD BE LOWER BASED UPON INFERIOR CONDITION.

File No. 13531.CVC Page #16

Avenue Appraisal Company, Inc.
1070B Massachusetts Ave.
Arlington, MA 02476

| DATE | REFERENCE |
|---|---|
| 3/22/05 | 13531.CVC |

**TO:**
**MR. WEEKS**

| DESCRIPTION |
|---|
| 62 OTIS STREET<br>BOOK 28960 PAGE 219<br>BROCKTON,MA  02302-3501<br><br>N/A |

| FEES | AMOUNT |
|---|---:|
| APPRAISAL FEE $475.00 | 475.00 |

| PAYMENTS | AMOUNT |
|---|---:|
| MONEY ORDER  RECIEVED AT DOOR FOR $475.00 | 475.00 |

| | TOTAL DUE | $ | 0.00 |
|---|---|---|---:|

# Building Sketch (Page - 1)

| | | | |
|---|---|---|---|
| Borrower/Client | N/A | | |
| Property Address | 62 OTIS STREET | | |
| City BROCKTON | County PLYMOUTH | State MA | Zip Code 02302-3501 |
| Lender | MR. JEROME WEEKS | | |



Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 1062.00 | 1062.00 |
| | TOTAL LIVABLE   (rounded) | | 1062 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| 4.0  x   7.0 | | 28.00 |
| 11.0  x  34.0 | | 374.00 |
| 22.0  x  30.0 | | 660.00 |
| 3 Calculations Total (rounded) | | 1062 |

## Building Sketch (Page - 2)

| | |
|---|---|
| Borrower/Client | N/A |
| Property Address | 62 OTIS STREET |
| City | BROCKTON |
| County | PLYMOUTH |
| State | MA |
| Zip Code | 02302-3501 |
| Lender | MR. JEROME WEEKS |



Sketch by Apex IV™

Comments:

```
       AREA CALCULATIONS SUMMARY
Code    Description           Size        Net Totals
GLA2    Second Floor         690.00         690.00
GLA3    Third Floor          360.00         360.00




         TOTAL LIVABLE   (rounded)          1050
```

```
          LIVING AREA BREAKDOWN
            Breakdown              Subtotals
Second Floor
        23.0  x    30.0              690.00
Third Floor
        12.0  x    30.0              360.00




   2 Calculations Total (rounded)    1050
```