## **E N D O R S E M E N T**

UNITED STATES v. JEROME WEEKES
04-CR-10385-MEL

LASKER, D.J.

      Defendant Jerome Weekes ("Weekes") moves, pursuant to Fed. R. Crim. P. 41 and 12(b)(3)(C), to suppress the seizure of his cell phone, and also submits an affidavit attesting to the sequence of events on the night of October 23, 2004.

      Weekes argues that the admission of his cell phone into evidence pursuant to an unconstitutional stop and seizure would be improper.  Weekes contends in his affidavit that on the night of October 23, 2004, he and Kelvin Brown ("Brown") were ordered to stop by Officer Mike Darrah ("Darrah") when they had not committed any crime nor given rise to any warranted police stop.  When Weekes and Brown elected not to stop because they feared for their safety, Darrah chased them down a street and up to a chain link fence.  At the fence, Darrah succeeded in wrestling Brown to the ground, while also grabbing at Weekes.  During this process, Darrah knocked Weekes's cell phone from his person to the ground.  Weekes, still fearing for his safety, continued to flee from Darrah.  Although the Government argues that Weekes's affidavit must be stricken on the grounds that he did not testify at the November 29, 2005 hearing for this motion, Weekes cannot be compelled to testify, nor do I rely on his affidavit to reach the decision below.

      The Government contends that Darrah stopped and pursued Weekes and Brown based upon a reasonable suspicion that they were linked to three gunshots fired that evening.  Darrah first observed Weekes and Brown earlier in the evening at Joe Angelo's Cafe, where he was working on paid detail.  Darrah observed them being disruptive and asked them to leave.  They complied, only to return soon thereafter.  Darrah again asked them to leave, but as they left they engaged in a verbal confrontation with a man in a Red Sox shirt.  After Darrah asked all three men to leave, he followed them into the parking lot where they eventually separated – the man in the Red Sox shirt got into a car near the entrance to the parking lot on Crescent Street, while Weekes and Brown went around a fence and began walking in the direction of Crescent Street.  Darrah contends that almost immediately after turning around to head back to the bar, he heard a gunshot.  Turning back around, Darrah heard two more gunshots and saw the muzzle flash from those two shots precisely where he had just

seen Weekes and Brown walking.  Darrah gave chase and caught up with the men as they tried to scale a section of fence along the Verizon building parking lot.  Darrah contends that he was able to grab Brown, but that Weekes successfully scaled the fence.  Brown was placed under arrest and Darrah radioed Weekes's description to other units.  A responding officer encountered Weekes walking away from the area and brought him back to Darrah, who then identified him as the second man he had been chasing.  The police searched the area and found a gun and a Nextel cell phone at the corner of the Verizon building.  The phone was later identified as belonging to Weekes.

Weekes contends that the facts do not satisfy the reasonable suspicion standard necessary to justify stopping him.  The standard has been articulated as the question, "Would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?"  Terry v. Ohio, 392 U.S. 1, 21-22 (1968).  The officer must also be able to "point to specific and articulable facts."  Id. at 21.  See also, U.S. v. Sokolow, 490 U.S. 1, 7-9 (1989)(considering the totality of the circumstances surrounding a stop and the need for objective justification).  Weekes points out that, while Darrah may have heard the gunshots, his testimony about seeing the muzzle flashes does not match the location in which the casings were found - a difference of more than 30 feet, behind a building through which Darrah could not have seen.  Weekes then argues that, "Neither Weekes nor Brown had previously exhibited conduct or an appearance which caused Darrah to believe that either was carrying a gun."  (Def.'s Memo in Support of Motion, p.9).

Despite the variance between Darrah's account of the night and Weekes's affidavit, the remaining undisputed facts strongly support a finding that the situation gave rise to a reasonable suspicion which warranted Darrah's actions.  Not only was Weekes in the close vicinity of the gunshots, but there also existed a "fair probability that contraband or evidence of a crime [would] be found in a particular place," Illinois v. Gates, 462 U.S. 213, 238 (1983), such that Darrah was not unreasonable in his assessment of the circumstances and his decision to stop and subsequently pursue Weekes.  Evaluating Darrah's actions based on what he knew before he commenced the pursuit, I find that the initial circumstances constituted sufficient grounds for reasonable suspicion.  See Florida v. J.L., 529 U.S. 266, 271 (2000)("The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search.").  An officer exercising reasonable caution would have been remiss if he had not gravitated toward the direction of the gunshots,

and, given Darrah's earlier observations concerning the confrontation with the man in the Red Sox shirt and the direction in which Darrah last observed Weekes and Brown traveling, he would clearly possess the grounds to form a reasonable suspicion giving rise to the order to stop. The totality of the circumstances combined clearly justified the stop and pursuit of Weekes and Brown.

The admissibility of the phone does not hinge on when or how it came to rest on the ground. Whether the cell phone was knocked from Weekes's person by Darrah during the chase or simply fell to the ground, it is still admissible based either on the abandonment or plain view doctrines. See U.S. v. Lewis, 40 F.3d 1325, 1334-35 (1st Cir. 1994); Payton v. New York, 445 U.S. 573, 587 (1980)("The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity."). The phone's presence on the ground near the gun rendered it admissible unless it was somehow the fruit of an illegal search or seizure. But as in California v. Hodari D., 499 U.S. 621, 629 (1991), the seizure did not occur until Darrah physically seized Weekes. The fact that Weekes dropped the phone prior to the physical seizure - whether Darrah effected the result or not - excludes it from the scope of the seizure. Even assuming, arguendo, that the seizure occurred prior to the phone falling to the ground, the seizure was based on a reasonable suspicion such that no Fourth Amendment violation occurred.

The Motion to Suppress is therefore DENIED.

It is so ordered.


Dated:     January 30, 2006
           Boston, Massachusetts        /s/ Morris E. Lasker
                                              U.S.D.J.