UNITED STATES OF AMERICA
DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 2004-10385-MEL

UNITED STATES OF AMERICA

v.

JEROME WEEKES

MOTION FOR JURY TO CONDUCT VIEW OF
SCENE OF FIREARM DISCHARGE AND ARREST

Now comes the defendant and moves this Honorable Court to enter an order that the jury will be provided a view of the location where the firearm was discharged and several fences near where the defendant was arrested.

MEMORANDUM

The decision to permit a view is entrusted to the sound discretion of the trial court. United States v. Pettiford, 962 F.2d, 74,76 (1st Cir. 1992). In making the determination, the court may consider such factors as the orderliness of the trial, whether the jury would be confused or misled as well as time and logistic factors. United States v. Crochiere, 129 F.3d 233, 236 (1st Cir. 1977). A view is appropriate if photographs and charts cannot do adequate justice to the layout of the scene. Pettiford, at 76.

In the instant case, the government's chief witness, Brockton Police Officer Michael Darrah, has stated that he observed the defendant and a man named Kelvin Brown walk behind

a green screen in a parking lot next to a bar in Brockton named Joe Angelo's Café.  Once the defendant and Brown went behind the green screen, Officer Darrah claims that he saw the flash of gun shots from the area where the defendant and Brown were walking.  Later that evening, other police officers recovered shell casings in the parking lot and the gun from which the shell casings were discharged.

The shell casings were recovered quite far from where Brown and the defendant were walking.  It is difficult to tell from a photograph or chart how far and how unreasonable it is to suggest that either Brown or the defendant could have discharged the firearm where Officer Darrah claimed that they were walking, given the location where the shell casings were recovered.

Additionally, not far from the scene of the firearm discharge there are several fences separating a parking lot from a field.  The defendant scaled one of those fences the evening when he was arrested.  The fence over which the defendant jumped is about six feet high.  Next to that fence is an eight foot tall fence.  Behind the eight foot fence is a four foot fence.

Officer Darrah claimed during the motion to suppress hearing and is expected to testify during trial that the defendant scaled the eight foot fence.  During the motion to suppress hearing Brockton Police Officer Healy testified that on the evening of the incident, Officer Darrah told Officer Healy

that the defendant scaled the six foot fence.

It is important for the jury to appreciate the layout of the three fences and to see how impractical it would have been for the defendant to even attempt to scale the eight foot fence. The gun which the government claims was possessed by the defendant was the same gun from which the two shell casings recovered from the parking lot were discharged.  That gun was recovered on the other side of the eight foot fence in an area further separated by the four foot fence.

The parking lot next to Joe Angelo's Café and the three fences are in Brockton, which is a city about 25 miles south of Boston, off Rt. 24.  Without heavy traffic, the trip from the United States Courthouse to the scene of the firearm discharge can be completed in less than forty minutes.  It is a five minute walk from Joe Angelo's to the three fences.

**Respectfully Submitted,**
**JEROME WEEKES,**

**By his attorney:**

_____
**J. THOMAS KERNER**
**MA BBO # 552373**
**Attorney at Law**
**230 Commercial Street**
**Boston, MA  02109**
**(617) 720-5509**