UNITED STATES OF AMERICA
DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 2004-10385-MEL

UNITED STATES OF AMERICA

v.

JEROME WEEKES

## MOTION TO RECONSIDER DENIAL OF RULE 29(c) MOTION

Now comes the defendant and moves this Honorable Court to reconsider its denial of the defendant's motion for a judgment of acquittal made after the jury returned it verdict of guilty of possession of a firearm in violation of 18 U.S.C. 922(g).

In support of this motion the defendant contends that the evidence presented to the jury during the trial, taken in the light most favorable to the government's theory, was insufficient to establish beyond a reasonable doubt that the defendant possessed a firearm after previously being convicted of a crime punishable by imprisonment for a term exceeding one year.  No consideration of the evidence established proof beyond a reasonable doubt of the government's theory that the defendant possessed the firearm discovered by the Brockton Police in a field in Brockton during the early morning hours of October 23, 2004.

**Facts:**

   1.   **The Discharge of the Gun:**

The jury was presented with trial testimony which, when

considered in the light most favorable to the government, established that during the early morning hours of October 23, 2003, a gun was discharged in the driveway/parking lot of the Brockton City Hall Annex on Crescent Street, Brockton.  Despite the government's contention to the contrary, the evidence failed to support any reasonable conclusion that the gun was discharged by the defendant.

The evidence established that the shell casings from the gun were discovered next to each other, about three feet apart, somewhere between forty-eight (48)and ninety (90) feet from the defendant's location in the parking lot when the gun was discharged.  Regardless whether Brockton Police Officer Darrah claimed that the distance was 30 feet, it is not reasonable to find that officer Darrah's contention was accurate.  For instance, if Officer Darrah claimed that he was ten feet tall no reasonable fact finder could find beyond a reasonable doubt that Officer Darrah was ten feet tall.

The Court and the jury were able to observe the parking lot and the exact location where the shell casings were discovered. The shell casings were discovered 48 feet from the southerly most point of the white wooden building between the parking lots of the City Hall Annex and Joe Angelo's Café.  They were discovered 90 feet from the southerly most point of the green fence which separated the two parking lots.  Officer Darrah

testified that when the gun was discharged the defendant was running somewhere north of the southerly most point of the green fence but still south of the southerly most point of the white building.

Officer Darrah further claimed that shell casings could end up 30 feet from where the gun was discharged if the person was running and the person kicked the shell casings.  Officer Darrah never said that a person could kick two shell casings so that they both would end up 48 to 90 feet from the site of discharge and right next to each other.  It is simply not a reasonable inference that the defendant discharged the firearm, given the location of the shell casings from where the defendant was located when the gun was discharged.

Finally, it is obvious from the jury's questions that the jury did not infer that the defendant discharged the gun.

    **2.    The Moving of the Gun:**

No one observed who discharged the gun.  No one observed who moved the gun from the City Hall Annex parking lot to where it was discovered.  The gun was discovered in a field two blocks away next to a parking lot behind the Verizon building on the corner of Crescent and Maple Streets.  The only evidence offered concerning who moved the gun was the defendant's testimony.  He said that he and Brown were shot at by the rear seat passenger of a dark SUV.  He further stated that he did not move the gun

3

from the City Hall Annex parking lot to the rear of the Verizon building.

The defendant was prepared to testify that Mr. Brown told the defendant that Mr. Brown had moved the gun from the City Hall Annex parking lot to the rear of the Verizon building. The Court would not allow that testimony, agreeing with the government that defense counsel's proffer in chambers was not sufficient to establish that Brown was unavailable for purposes of F.R.Evid. 804. The defendant contends that the Court's ruling was wrong. United States v. Winn, 767 F.2d 527 (9th Cir. 1985) and M. S. Walker, Inc. v. Travelers Indemnity Company, 470 F.2d 951 (1st Cir. 1973).

The defendant was confined from the date of his Brockton District Court arraignment, October 25, 2004, until May 6, 2005. From May 6, 2005 up to the date of trial, Mr. Weekes made an exhaustive effort to locate Mr. Brown and to secure his presence at trial.

The only contact that Mr. Weekes was able to make with Mr. Brown was on one occasion, well prior to trial. On that occasion Mr. Weekes saw and spoke briefly with Mr. Brown when Mr. Weekes observed Mr. Brown to be in the company of a mutual friend. It was during that single occasion that Mr. Brown told Mr. Weekes that Brown had picked up the gun which had been dropped or thrown from the car in which the person who

discharged the gun was a passenger. Mr. Brown carried the gun from the City Hall Annex parking lot to the Verizon parking lot, where he discarded the gun.

Mr. Weekes asked Mr. Brown to tell law enforcement. Mr. Brown not only refused to talk to law enforcement, he refused to talk to Mr. Weekes further about the incident. Mr. Weekes informed defense counsel, who informed the prosecutor. Mr. Brown was the subject of a defense motion *in limine*.

Mr. Weeks efforts to determine where Mr. Brown resided consisted of inquiring with Mr. Brown's mother, a girl Mr. Brown used to date and other persons who knew Mr. Brown. Mr. Brown was not residing at the address he gave to the Brockton District Court when he was charged with possessing the same gun which the government claims was possessed by Mr. Weekes. Mr. Brown's mother on numerous occasions told Mr. Weekes that she did not know where Mr. Brown was residing but that she would tell Mr. Brown to contact Mr. Weekes. By May 2005, the above referenced girl had long lost contact with Mr. Brown. Mr. Brown's acquaintances either couldn't or wouldn't help Mr. Weekes find Mr. Brown.

In <u>Winn</u>, <u>supra</u>., at 531, the Court ruled as follows:

> A witness is not "unavailable" unless the prosecutor makes a good faith effort to obtain the witness's presence. <u>Ohio v. Roberts</u>, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980). But, "[t]he law does not require the doing of a futile act," and the extent of the efforts the prosecutor must make is a question of reasonableness. <u>Id</u>.

The government, in <u>Winn</u>, had no addresses or any other information that would help locate the unavailable witnesses. The <u>Winn</u> court held that the government established unavailability and, under the circumstances, it was reasonable for the government to make no effort to find them. <u>Id</u>.

Mr. Weekes made an exhaustive and good faith effort to obtain Mr. Brown's presence for trial even though Mr. Weekes had no expectation that Mr. Brown would do anything other than exercise his 5th Amendment right not to incriminate himself. He could not subpoena Mr. Brown because he did not know of an address where he could serve a subpoena. Mr. Brown was unavailable. His statement to Mr. Weekes was admissible pursuant to F.R.Evid. 804(b)(3).

**3. The Fences:**

The only evidence presented which suggested that Mr. Weekes, as opposed to Mr. Brown, may have moved the gun from the City Hall Annex parking lot to the Verizon parking lot was the government's testimony that the gun and a phone

belonging to Mr. Weekes were discovered on the other side of a narrow eight foot tall fence Mr. Brown tried to climb and over which Mr. Weekes climbed.

Officer Darrah's testimony concerning which fence was climbed by Mr. Weekes was contested not only by the defendant but by the Brockton Police.  The defendant claimed that he climbed a six foot tall fence which was next to the narrow eight foot tall fence and which led to the field into which the defendant escaped from Officer Darrah.  Officer Darrah claimed that the defendant climbed an eight foot tall fence.  Brockton Police Officer Healy testified that Officer Darrah told him that the defendant climbed over the six foot fence.

The Court prevented the defendant from introducing evidence which would have demonstrated that Officer Darrah's testimony was not only contradicted by Officer Healy but not reasonable.  Officer Darrah testified that Mr. Brown tried to climb the eight foot fence but only got to the bottom of the fence before he was pulled off by Officer Darrah.  The Court, agreeing with the government that the pictures of Mr. Brown taken by the Brockton Police at booking on October 23, 2004 (Exhibit 1) were unduly prejudice, excluded the pictures as evidence during trial.  The pictures show the wounds on Mr. Brown's hands which Mr. Brown received when he

7

reached the top of the eight foot fence. The jury even requested to rehear the testimony concerning the arrest of Mr. Brown.

**Argument:**

When determining a motion for a judgment of acquittal, the court should decide whether a guilty verdict is supported in a plausible rendition of the record. See United States v. Rivera-Ruiz, 244 F.3d 263, 266 (1st Cir. 2001). The remedy for a successful sufficiency of the evidence challenge is an order directing a judgment of acquittal. See Burks v. United States, 437 U.S. 1, 18 (1978). The court should assess the sufficiency of the evidence as a whole, including reasonable inferences, in the light most favorable to the government's theory, with a view to whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. United States v. Passos-Paternina, 918 F.2d 979, 983 (1st Cir.1990) (sufficiency of evidence); United States v. Sanchez, 917 F.2d 607, 610 (1st Cir.1990) (same); United States v. Smith, 680 F.2d 255, 259 (1st Cir.1982) (motion for judgment of acquittal), cert. denied, 459 U.S. 1110, 103 S.Ct. 738, 74 L.Ed.2d 960 (1983). The court should not weigh witness credibility, but resolve all credibility issues in favor of the government. Passos-Paternina, 918 F.2d at 983; Sanchez,

917 F.2d at 610; McNatt, 813 F.2d at 502. The evidence may be entirely circumstantial, United States v. Boylan, 898 F.2d 230, 242 (1st Cir.1990); United States v. Mount, 896 F.2d 612, 615 (1st Cir.1990), and need not exclude every reasonable hypothesis of innocence, United States v. Laboy, 909 F.2d 581, 588 (1st Cir.1990); Mount, 896 F.2d at 615; that is, the fact finder may decide among reasonable interpretations of the evidence, Laboy, 909 F.2d at 588; United States v. Blair, 886 F.2d 477, 478 (1st Cir.1989).

In the instant case the only reasonable inference which could have been drawn from the trial evidence, which was entirely circumstantial as to who possessed the gun, was that Mr. Weekes and Mr. Brown were shot at in the City Hall Annex parking lot and that either Mr. Brown or Mr. Weekes picked up the gun and ran with it from the City Hall Annex parking lot to the rear of the Verizon building. No fact finder could reasonably conclude beyond a reasonable doubt whether Mr. Brown or Mr. Weekes was the person who picked up the gun and moved it from the City Hall Annex parking lot to the rear of the Verizon building. The defendant's motion should be granted. The Court should enter a judgment of acquittal.

        **Respectfully Submitted,**
        **JEROME WEEKES,**

        **By his attorney:**


        _____
        **J. THOMAS KERNER**
        **MA BBO # 552373**
        **Attorney at Law**
        **343 Commercial St. Unit 104**
        **Boston, MA  02109**
        **(617) 720-5509**





