```
                UNITED STATES DISTRICT COURT
                 DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA   )
                           )
          V.               )     CR. NO.04-10385-MEL
                           )
JEROME WEEKS               )
```

**OPPOSITION TO DEFENDANT'S MOTION**
**TO RECONSIDER DENIAL OF RULE 29(C) MOTION**

The United States opposes the Motion of defendant Jerome Weeks ("Weeks") to reconsider this Court's previous denial of his motion for a judgment of acquittal after, and notwithstanding, the Jury returned a guilty verdict.

Introduction

The evidence at trial was much more than sufficient to sustain the Jury's verdict. Weeks' contention otherwise is replete with incorrect and misleading statements of the facts and incorrect application of the relevant law. Moreover, each of the arguments Weeks advances here was made to, and rejected by, the Jury. The government notes that the Court previously, and correctly, denied Weeks' motion to dismiss at the close of the government's case-in-chief, his motion for acquittal made at the close of all the evidence (and prior to the verdict) and his previous motion for acquittal after the jury verdict, all of which were based on the same arguments Weeks makes here.

Relevant Law

Weeks' motion must be denied if the evidence at trial was sufficient for a rational fact finder, considering all of the evidence in the light most favorable to the verdict, to have found beyond a reasonable doubt each element of crime charged. United States v. McCormack, 371 F.3d 22, 27 (1st Cir. 2004), cert. denied, 543 U.S. 1098 (2005). More specifically:

> If the evidence presented, taken in the light most flattering to the prosecution, together with all reasonable inferences favorable to it, permits a rational jury to find each essential element of the crime charged beyond a reasonable doubt, then the evidence is legally sufficient. See Jackson v. Virginia, 443 U.S. 307, 319 (1979) [additional citations omitted]. In evaluating sufficiency, both direct and circumstantial evidence are accorded weight. See, e.g., United States v. O'Brien, 14 F.3d 703, 706 (1st Cir. 1994). So long as the evidence, taken as a whole, warrants a judgment of convictions, "it need not rule out other hypotheses more congenial to a finding of innocence." United States v. Gifford, 17 F.3d 462, 457 (1st Cir. 1994).
>
> When . . . a criminal defendant mounts a sufficiency challenge, all the evidence, direct and circumstantial, is to be viewed from the government's coign of vantage. Thus, the trial judge must resolve all evidentiary conflicts and credibility questions in the prosecution's favor; and, moreover, as among competing inferences, two or more of which are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt. See United States v. Taylor, 54 F.3d 967, 974 (1st Cir. 1995); United States v. Rothrock, 806 F.2d 318, 320 (1st Cir. 1986).

United States v. Olbres, 61 F.3d 967, 970 (1st Cir. 1995).

Moreover, this Court must look at the whole of the evidence introduced at trial. "[I]ndividual pieces of evidence,

insufficient in themselves to prove a point, may in cumulation prove it.  The sum of an evidentiary presentation may well be greater than its constituent parts." <u>Bourjaily v. United States</u>, 485 U.S. 171, 179-80 (1987).  <u>See also</u> <u>Huddleston v. United States</u>, 485 U.S. 681, 691 (1988)(same).

### The Defendant Possessed The Gun

Contrary to Weeks' assertions, the evidence established beyond any reasonable doubt, and the Jury found, that he possessed the gun.  First, the evidence established that the gun was fired three or four times in the City Hall Annex parking lot.  Officer Darrah saw and/or heard three or four shots coming from Weeks' and Brown's precise location - a location where no one else was present at the time.  The evidence also established that two shell casing recovered in the City Hall Annex parking lot were fired from the gun (which was found next to Weeks' cell phone just over the fence from where Weeks escaped from Office Darrah).

Second, the evidence overwhelmingly established that <u>only</u> Weeks, <u>and</u> <u>not</u> <u>Brown</u>, could have carried the gun, to the location over the tall fence where it was found next Weeks' cell phone.  That evidence established, among other things, that Office Darrah never lost sight of Brown (or Weeks) from the time he encountered them near the intersection of Crescent Street and the City Hall Annex parking lot until he caught Brown at the tall fence (and

3

saw Weeks fall over the tall fence.)  Darrah testified that Brown never tossed, dropped or pushed the gun to the other side of the tall fence (where Weeks fell), and that if Brown had done so, he would have seen it.  Consequently, and as the Jury determined, only Weeks could have brought the gun to the location over the tall fence where it and his cell phone were found.[1]

Weeks' assertion that the two recovered shell casings (of the three or four actually fired) could not have traveled approximately thirty feet from where Officer Darrah saw and heard the second and third (and perhaps fourth) shots (near the white building) to where they were recovered is both a red-herring and without merit.[2]  As noted above, the exact same argument was made

---

[1] Although there is no credible supporting evidence, it is at least theoretically possible that Brown, not Weeks, fired the shots and gave the gun to Weeks before Officer Darrah saw them both at the intersection of Crescent Street and the Annex parking lot.  Even according to this theory, Weeks possessed the gun. Weeks' testimony about: being shot at from a car travelling from Crescent Street down the Annex parking lot without the car being seen or heard by Officer Darrah; the shooter tossing a loaded gun to his targets (Weeks and Brown); and Brown then picking up the gun that had been fired at them is completely incredible and was plainly so regarded by the Jury.  The evidence, as supported by the Jury verdict, establishes that Weeks' repeatedly perjured himself and that his testimony was rejected by the Jury in its entirety.

[2] Officer Darrah's testimony, which the Jury plainly credited, (and which for the purpose, of Weeks' motion must be credited - Taylor, 54 F.3d at 974; Rothrock, 806 F.2d at 320) was that he heard the first shot coming from Weeks' and Brown's location shortly after they walked behind to green, slatted fence (toward Cresent Street.)  Darrah testified that shortly thereafter, he saw two muzzle flashes, and heard two or three

to the jury and rejected.  (It was also made to, and rejected by, this Court in Weeks' earlier motion to dismiss and two motions for acquittal).

The government's trial evidence established that fired shell casings can end up anywhere.  The ultimate resting place of fired shell casings can be influenced by an incalculable number and variety of factors including, among <u>many</u> others: if the shooter is running; the hardness of the surface the shells fall onto (causing them to bounce or roll); wind; becoming caught in the shooter's clothing; and being kicked or otherwise contacted by the shooter and those with him.  Further evidence at trial that shell casings can, and do, and up anywhere is that here only <u>two</u> of the <u>three</u> or <u>four</u> fired shell casings were found despite a search by police officers of the shooting area immediately after the shooting.  At least one, and perhaps two, fired shell casings were <u>never</u> recovered.  One plainly evident theory of how the two recovered shell casings came to be found where they were is that they fell into or onto the running shooter's clothing and then, eventually, fell (and perhaps bounced and/or rolled) to where they were recovered.  As the Jury determined, Weeks' contentions

---

more shots from the location where Weeks and Brown were now running at, or just past, the white building in the City Hall Annex parking lot.  Officer Darrah further testified that the distance from where the second, third (and perhaps fourth shots) were fired by Weeks or Brown, while they were running toward Crescent Street) to the location where the shell casings were recovered is, by measurement, approximately thirty feet.

regarding the recovered shell casings are without merit.

### Brown's Alleged Statements To Weeks

Weeks contends that the Court improperly prevented him from testifying that Brown purportedly told him that Brown "... had picked up the gun which had been dropped or thrown from the car in which the person who discharged the gun was a passenger. Mr. Brown carried the gun from the City Hall Annex parking lot to the Verizon parking lot where he discarded the gun." (See Weeks' Motion at pp. 4-5). Weeks' contention is contrary to the law and lacks any factual basis.

Weeks did not make, and does not now establish, any adequate showing that Brown was unavailable. He <u>now</u> conveniently asserts, without <u>any</u> supporting documentation, affidavits or other corroboration that: from May 6, 2005 up to the date of trial (September 18, 2006), he made "an exhaustive effort" to locate Mr. Brown and secure his presence at trial"; he saw Brown in "the company of a mutual friend" and spoke to him once "well prior to trial"; he inquired of "Mr. Brown's mother, a girl Mr. Brown used to date and other persons who know Mr. Brown"; and that Brown's "acquaintances either couldn't or wouldn't help Mr. Weeks find Mr. Brown." (See Weeks' motion at pp. 4-5).

In addition to being insufficient to establish Brown's unavailability, those unsupported assertions are directly contradicted by statements made by Weeks in his Motion In Limine

filed on September 8, 2006 (shortly before trial.)  There, on September 8, 2006, in an effort to force the government to immunize Brown, Weeks stated that he <u>then</u> intended to subpoena Brown as a trial witness, and he <u>then</u> expected Brown to invoke his 5th Amendment rights and refuse to testify.

> It is the defendant's intent to subpoena Kelvin Brown as a witness at trial.  It is the <u>defendant's understanding</u> that Mr. Brown will invoke his rights pursuant to the 5th Amendment to the United States Constitution and refuse to testify.

See defendant's Motion in Limine at pp. 2-3 (emphasis added). That as recently as September 8, 2006, Weeks intended to subpoena Brown to trial and asserted that Brown would invoke his 5th Amendment rights contradicts Weeks present claims that he had made exhaustive, unsuccessful attempts to locate Brown from May 6, 2005 until September 18, 2006.  (See Weeks' motion at p. 5).

   Weeks' facile claims to have tried to obtain Brown's presence at trial are insufficient to establish that Brown was unavailable.  As noted above, there is no corroboration, documentation or even an affidavit to support his claims. Moreover, Weeks purported efforts are insufficient to establish a good faith effort to obtain Brown's presence.[3]  Obvious steps

---

[3] A witness is not unavailable for purposes of admitting his hearsay statement unless the proponent of the statement makes a good faith effort to obtain the witness's presence. <u>Ohio v. Roberts</u>, 448 U.S. 56, 74 (1980).  Weeks' apparent suggestion that the government had an obligation to attempt to obtain the presence of Brown, who was to be Weeks' witness alone (and <u>not</u> a

that Weeks might have, and did not, take to obtain Brown's presence at trial included, among others: leaving a subpoena at Brown's known residence and his mother's residence; seeking this Court's permission and funds to hire a private investigator to locate and subpoena Brown (a common practice in the District Court here); and contacting, through counsel or directly, Brown's lawyer in the underlying state case in which Brown was arrested with Weeks.

Weeks also makes no showing that Brown's statements are admissible even if he were shown to be unavailable.  Weeks mere, unsupported assertion that Brown's purported statement to Weeks "was admissable pursuant to F.R.Evid. 804(b)(3)" is insufficient. Brown is not, and was not, a convicted felon at the time Weeks asserts Brown possessed and carried the gun.  Consequently his purported statement to that effect would not be against his penal interest.

Weeks' claims are also insufficient to establish <u>any</u> reliability concerning Brown's purported statements.  In his Motion in Limine filed on September 8, 2006, Weeks claimed <u>only</u> that Brown would assert his 5th Amendment rights.  Now, Weeks conveniently claims that Brown told him he picked up and transported the gun.  Just as with Weeks' unsupported claims of extensive efforts to secure Brown's presence at trial, he

---

government witness) is misplaced.

provides no corroboration, affidavits, attorney proffers or other documentation whatsoever to support his bare assertions. That is plainly insufficient.

It is simply too convenient for a testifying criminal defendant to merely assert, without any corroboration, documentation or supporting affidavits, that he made extensive efforts to find a witness and that the purported witness made exculpatory statements to him. The Court correctly determined that such self-interested, mere assertions are insufficient to support a determination that Brown was unavailable or that the purported statements were reliable.[4]

### Photographs of Brown

Weeks argues that the Court improperly refused to admit police photographs of Brown. The evidence at trial established that the injuries to Brown depicted in the photographs occurred when Officer Darrah pulled Brown off the fence, wrestled him to the ground and, after a struggle, ultimately subdued and searched him with the help of other officers. There was no evidence that Brown ever climbed to the top of the fence or that his injuries were caused by climbing to the top of the fence. The Court did allow testimony concerning Brown's injuries, their nature and

---

[4] Moreover, just as the Jury completely rejected Weeks' plainly perjurious testimony, it is reasonable to conclude it would have disbelieved his self-interested, uncorroborated testimony about what Brown purportedly said to him.

9

their cause. Weeks' request to admit the photographs was a transparent attempt to improperly inflame the jury against the police officers with irrelevant, graphic depictions of Brown's injuries. After allowing testimony concerning the injuries, the Court correctly denied admission of the photographs for that reason and also because the government had no notice of Weeks' intent to use the photographs, which, among other things, were not on any defense Proposed Exhibit List as required by the relevant rules.

## Conclusion

For the forgoing reasons, Weeks' motion should be denied.

                            Respectfully submitted,

                            MICHAEL J. SULLIVAN
                            United States Attorney

                       By: /s/CHRISTOPHER F. BATOR
                          Assistant U.S. Attorney

                          Date: November 3, 2006

## CERTIFICATE OF SERVICE

I, CHRISTOPHER F. BATOR, certify that a copy of the above has been served upon counsel of record by electronic filing.

                          /s/CHRISTOPHER F. BATOR
                          Assistant U.S. Attorney

                          Date: November 3, 2006