UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
              v.                )    No. 04-CR-10385-MEL
                                )
JEROME WEEKES                   )
                                )
                                )

**OPPOSITION TO MOTION FOR NEW TRIAL AND RESENTENCING**

The United States opposes defendant Jerome Weekes'("Weekes")
Motion for New Trial and Resentencing. In support of its
opposition, the government states the following.

**I. The Court Did Not Violate Weekes' Sixth Amendment Rights**

The defendant seeks a new trial based on an argument that
this Court violated the defendant's Sixth Amendment right to a
jury selected at random from a fair cross-section of the
community  when it denied the defendant's request to dismiss the
all-white jury venire. See Weekes' Memorandum submitted in
support of his motion, hereinafter "Defendant's Memorandum", at
7.  It is unclear whether the defendant is referring to the
jurors seated in the jury box before preemptories were exercised
as all-white, or the entire jury pool in the courtroom from which

1

the seated jury was selected.[1]  But in any event his motion must be denied for multiple reasons.

First, "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b). The time limitation of Rule 33(b) has been found to be jurisdictional, depriving this Court of jurisdiction to hear any new trial claim not filed within seven days of verdict, excepting only claims of newly discovered evidence. United States v. Fontanez, 628 F.2d 687 (1st Cir. 1980); United States v. Bern, 546 F.2d 1316 (8th Cir. 1976). Whatever the defendant claims as grounds for his Sixth Amendment jury selection claim, it is not based on newly discovered evidence.  Defendant appears to contend that this district's adoption of a new jury selection plan on March 1, 2007, is newly discovered evidence.  It simply is not, any more than a legal ruling from the First Circuit or the Supreme Court post-verdict would not be newly discovered evidence.

Second, defendant's motion to dismiss the jury venire does not preserve a challenge to the jury selection plan in this district, whether or not a new trial motion is the appropriate

---

[1] From the portion of the transcript submitted in support of defendant's claim, it appears that the Court, in response to defendant's motion to dismiss the whole venire, recognized one dark skinned person, and then noted that "there are a few over there." 9/18/06 Transcript, hereinafter "Tr.", at 24-25.

vehicle for a properly preserved challenge.  The Jury Selection
and Service Act, 28 U.S.C. §1861 *et seq.* (The "Act"), has its own
procedures for challenging compliance with jury selection
procedures.  28 U.S.C. §1867.  Those procedures do not include
the defendant's motion to dismiss the whole venire, and were not
otherwise complied with by the defendant in this case.

Third, the defendant grossly misstates the First Circuit's
recent opinion upholding the jury selection plan that was in use
when defendant's trial went forward.  In Re United States of
America, 426 F.3d 1 (1st Cir. 2005).  The defendant cites, or
more accurately, mis-cites, In Re United States for the
proposition that "the First Circuit stated that the District
Court's plan for selecting potential jurors (used at the time the
defendant was tried) was flawed, in that the list of potential
jurors undercounted African-Americans." Defendant's Memorandum,
at 11.  The First Circuit made no such statement.

The First Circuit had before it jury selection remedies
imposed by Judge Gertner in the case of United States v. Green,
389 F.Supp 2d 29, 63, 74 (D. Mass. 2005).  In Green, Judge
Gertner rejected the defendants' constitutional attack on this
district's jury selection plan, but found that "the current
arrangements in this district for jury selection were unlawful
under the statute."  In Re United States, 426 F.3d at 3.  The
First Circuit first found that Judge Gertner could not

unilaterally adopt jury selection plan procedures contrary to the plan applicable to all district courts in this district, and in fact, herself violated the existing plan with her proposed remedies.  Id. at 6-7.  Next, the First Circuit noted that based on its fairly recent decision in United States v. Royal, 174 F.3d 1, 10-11 (1st Cir. 1999), Judge Gertner correctly recognized that the then-existing plan in this district complied with the Sixth Amendment.  Id. at 8.  The court then found that Judge Gertner erred in concluding that the Act imposed a different and more stringent cross-section requirement than the Sixth Amendment, as it and other courts had previously held the Act to impose essentially the same obligation.  Id. at 8.

Thus, in In Re United States, the First Circuit reversed Judge Gertner's holding that the then-current jury selection plan violated the Act, and reaffirmed its earlier holding in Royal that the plan conformed with the requirements of the Sixth Amendment.  Given the holding of In Re United States, the defendant has no good faith argument that his Sixth Amendment right to a jury randomly selected for a fair cross-section of the community was violated.

The defendant's claim, that "there can be little doubt that the juror selection process was not proper at the time of Weekes's trial" ignores the First Circuit's holding in In Re United States that the plan complied with both constitutional and

4

statutory requirements.  The government is at a loss to understand how a plan in compliance with constitutional and statutory requirements was not "proper."  The very plan under which the defendant's jury was selected was found by the First Circuit to be in compliance with  both statutory and constitutional requirements.  Given that, the fact that the district court later adopted a new plan is irrelevant to whether the prior plan was constitutional and in conformity with the requirements of the Act.  The Sixth Amendment, as well as the Act, provides a threshold which jury selection plans must meet. But a court always has the power, and should be encouraged, to refine even constitutional plans to eliminate to the extent possible any under-representation of any recognized group, even if any such representation offends neither the constitution nor the Act.  In Re United States, 426 F.3d at 9 ("The district Court has always been free to revise its jury plan in compliance with the statute."). Consequently, Weekes' request for a new trial on the grounds that his Sixth Amendment right to an impartial jury was denied is without merit.


**II. Weekes Is Not Entitled To A New Trial Based On Kelvin Brown's Purported Statement**

     To obtain a new trial based on newly discovered evidence, a defendant must show that:(1) the evidence was unknown or

unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material, and not merely cumulative or impeaching; and (4) the evidence will probably result in an acquittal upon retrial of the defendant. United States v. De La Cruz, 514 F.3d 121, 134 (1st Cir. 2008); United States v. Wright, 625 F.2d 1017, 1019 (1st Cir. 1980). A motion for new trial must be denied if the defendant fails to meet any one of these four factors. United States v. Gonzalez-Gonzalez, 258 F.3d 16,20 (1st Cir. 2001). For newly discovered evidence to warrant a retrial in a criminal case, "the existence of the required probability of reversal must be gauged by an objectively reasonable appraisal of the record as a whole, not on the basis of wishful thinking, rank conjecture, or unsupportable surmise". United States v. George, 448 F.3d 96,101 (1st Cir. 2006).

## A. Weekes' Purported[2] Evidence Was Not Unknown At Time Of Trial

The alleged out-of-court statement of Kelvin Brown that Weekes now claims to be newly discovered evidence was known to Weekes at the time of trial. The statement was specifically discussed during a conference on Day Three of the trial. See Tr. 9/20/06 at

---

[2] As noted below (see pp.13-15), contrary to Weekes' assertion, Brown's alleged statement does not qualify as admissible evidence pursuant to Fed.R.Evid. 804(b)(3).

pp. 9-11. (As discussed below, Weekes' attempt to have the statement admitted as a statement against interest during his own trial testimony was denied by the Court, apparently because there was no evidence, beyond Weekes' mere assertion, that the statement was made, and there was no showing that the witness was unavailable). Id. Also, according to Weekes, Brown made the alleged statement to him "well prior to trial". See defendant's Motion For Release Pending Appeal [Docket No. 75] filed on July 9, 2007, at p.2.

**B. There Is No Evidence That Brown Was Unavailable For Trial**

Although Weekes claims to have known of Kelvin Brown's alleged statement before trial, there is not a shred of **credible evidence** that Weekes made any effort to find Brown, to obtain his testimony at trial, or to establish his unavailability to testify. Weekes merely makes unsworn assertions, without any corroboration or support, that he unsuccessfully attempted to contact Brown through "an old [unnamed] girfriend" and that he did not know where Brown was. See Tr. 9/20/2006 (Day 3 of trial) at p. 10. As the government argued at trial when Weekes sought admission of Brown's alleged statement (through Weekes'own testimony) as a statement against interest, and as the Court apparently found, that is plainly insufficient to establish unavailability. Tr.9/20/2006 (Day 3 of Trial)at p.10. Even

7

assuming Weekes had filed an affidavit swearing to Brown's
purported statement and his purported efforts to obtain Brown's
testimony at trial, that would be insufficient. See <u>United States
v. Wright</u>, 625 F.2d at 1020 (motion for new trial based on new
evidence properly denied for defendant's lack of due diligence in
seeking to locate witness to testify at trial, where defendant
was aware of witness' potential testimony, didn't seek a
continuance to find witness, and affidavit indicated that
defendant's only effort to locate witness was to ask others of
witness' whereabouts).

    Obvious steps Weekes might have taken, but did not take, to
attempt to establish the existence of Brown's statement and his
unavailability to testify at trial include, at the very least,
the following: subpoenaing Brown to trial (at a last known
address); hiring a private investigator to locate Brown; seeking
funds from the Court for the limited purpose of hiring a private
investigator to locate Brown; requesting a continuance of the
trial to locate Brown (see <u>Wright</u>,625 F.2d at 1017; <u>United States
v Dirring</u>, 353 F.2d 519 (1st Cir. 1965)); filing an affidavit
swearing to his assertions; filing affidavits from the unnamed
"old girlfriend" of Brown and Brown's unnamed mother swearing to
his and their actions and statements; and issuing subpoenas to
witnesses (including Brown, Brown's mother, and Brown's old
girlfriend)for a pretrial hearing to establish the fact of

8

Brown's statement and his unavailability at trial).[3]

Weekes' motion appears to attempt to bootstrap his assertion that Brown was unavailable for trial on the the claim that Brown is **now** unavailable. He purports to support the latter claim through affidavits from his counsel and a former attorney for Brown concerning conversations with Brown that occurred **after** the trial. See Exhibits 3 and 4 to defendant's motion. Even if one credits Weekes' assertions, that is insufficient to establish that he exercised due diligence in seeking to locate Brown and obtain his testimony at trial and that Brown was unavailable at trial.

There is also not a **shred** of evidence beyond Weekes' unsworn, self-serving statement that Brown ever said or would testify that he picked up the gun and carried it to the fence. Other than Weekes' mere assertion, any suggestion about what Brown purportedly told Weekes long before trial, or told his own counsel in November,2006, after the trial, is pure speculation. See Exhibit 4 to Weekes' motion. That Brown's lawyer advised him

---

[3] Weekes' memorandum appears to suggest that he was aware long before trial that he couldn't locate Brown, that he had no address for Brown, and that any attempt to secure Brown's presence and testimony (such as by issuing a subpoena) was futile. See Defendant's Memorandum at pp.16-17. However, in his Motion In Limine filed on September 8, 2006, only ten days before the trial began, Weekes stated that he still intended to subpoena Brown to trial. "It is the defendant's intention to subpoena Kelvin Brown as a witness at trial". See Weekes' Motion In Limine [Docket No. 49] at pp.2-3.

in November, 2006 (<u>after the trial</u>) that "unless he was promised immunity from prosecution his testimony in the Weekes matter could subject him to criminal prosecution" does not establish that he picked up and carried the gun or that he told Weekes that he did. There are countless other things Brown might have told his counsel that would have prompted reasonable counsel to advise him not to testify without immunity. (For example, Brown might have said the gun had been his (he had possessed it), but that he loaned, gave or sold it to Weekes. He might have said he handed the gun to Weekes who then fired the shots and carried it to the fence). Consequently, and as noted below, there is no credible evidence that Brown actually told Weekes that he picked up and carried the gun to the fence, only Weekes' self-serving, unsworn, and completely uncorroborated assertion[4].

---

[4] Although it is very confusingly worded, upon careful reading, the affidavit of Weekes' lawyer also provides no support for the contention that Brown picked up and carried the gun or told Weekes that he did. The affidavit states "When defense counsel [Kerner] met with Mr. Brown he [Kerner] stated what Mr. Weekes claimed he had been told by Brown prior to trial. Defense counsel [Kerner] then asked Mr. Brown if that was accurate..." Brown never confirmed the statement. (See Exhibit 3 to Defendant's' Memorandum).That the "he" who "stated what Mr. Weekes claimed he had been told by Brown prior to trial" is Kerner (not Brown) is confirmed by the account of the same events in Weekes' Memorandum, at p.6, and also in Weekes' "Motion To Stay Appellate Proceedings And Remand Case To District Court So That Defendant May File Motion for New Trial" filed in the Court of Appeals on January 17, 2008,at p.4. ("When defense counsel met with Brown, **defense counsel** told Brown what Weekes claimed Brown had told Weekes prior to trial." (Emphasis added).

**C. Brown's Alleged Statement Will Not Result In An Acquittal Upon Retrial**

Even assuming Brown's purported statement qualified as newly discovered and was also admissible as a statement against interest(it isn't-see below), it would not change the result at trial. As noted above, Weekes' claim that Brown made the statement is completely uncorroborated. Weekes' trial was, in part, a credibility contest between Weekes (who testified at trial) and the law enforcement officers who testified. In convicting Weekes, the jury necessarily rejected his entire testimony. It had to find his testimony completely incredible. It is unlikely that a jury hearing the same evidence would find Weekes (and his bizarre story about what happened) credible because of a self-serving, completely uncorroborated statement that Weekes testifies Brown made to him.

In addition to being uncorroborated, Brown's alleged statement is also inconsistent with virtually all the trial evidence (and all the evidence necessarily accepted by the jury to convict). To be believed, the claim that Brown picked up the gun and carried it to the fence requires, among other things, that one accept Weekes' story that: the car carrying the man wearing the Red Sox shirt drove down the alley where Weekes and Brown were running (towards the car); that someone in the car fired shots at Weekes and Brown and then left or dropped the

11

still-loaded gun near Weekes and Brown while driving by them;
that unknown to Weekes, Brown picked up the gun; that although
the car carrying the shooter sped away, Weeks(the purported
innocent victim), followed by Brown , ran away at full sprint,
refusing to stop for, and obey, a uniformed police officer, whom
he saw, and who told him to stop (and whom he **didn't** stop and
tell "We just got shot at. Please help us. The shooter went that
way"); and although Weekes, but not Brown, escaped from the hotly
pursuing police officer over a fence, and the gun was found over
the fence ,near where Weekes climbed over, **right next to Weekes'**
**cellphone**, Brown, not Weekes, always had possession of the gun.

   As noted above, those assertions, which constituted Weekes'
defense at trial, are directly contrary to the credible evidence
at trial. They fail to explain, among other things: how Weekes'
cellphone came to be found right next to the gun (and over the
fence he climbed to escape from the police officer); and why,
according to Weekes' story, at the time the shots were fired,
Weeks ran towards the car from which the shots were fired.  As
also noted above, in convicting Weekes, Weekes' story was
necessarily rejected in whole by the jury. It is unlikely that a
jury hearing the same evidence would reject virtually the entire
evidence accepted by the trial jury, and accept the evidence
rejected by the trial jury, based solely on Weekes' self-serving,
uncorroborated statement that Brown told him he(Brown)picked up

the gun and carried it to the fence.

Because: Brown's purported statement was known to Weekes; Weekes made no diligent effort to find Brown and get him to testify; Weekes did not show Brown to be unavailable at the time of trial; and because, even if admitted, the statement would not result in an acquittal upon retrial, Weekes' motion must be denied. De la Cruz, 514 F.3d at 134; Wright, 625 F.2d at 1019; Gonzalez-Gonzalez, 258 F.3d at 20.

## III. Brown's Alleged Statement Is Not Admissible As A Statement Against Interest

Even assuming that Brown's statement qualified as newly discovered, it is not admissible as a statement against interest pursuant to Fed.R.Evid.804(b)(3). For a statement to be admissible under Rule 804(b)(3), it must be shown, among other things, that "the declarant is unavailable", and (in the case of a statement "tending to expose the declarant to criminal liability and offered to exculpate the accused" like Brown's) also that "corroborating circumstances clearly indicate the trustworthiness of the statement". Id. To establish that a declarant is unavailable, courts have consistently held that the proponent must show at least a good faith, genuine and bona fide effort to procure the witness' attendance. United States v. Mann, 590 F.2d 361, 367 (1st Cir. 1978)and cases cited. " [O]ther

13

reasonable means besides subpoenas must be tried before a witness can be found unavailable". Id. This "relatively high good faith standard cannot be satisfied by perfunctory efforts..." Id. To establish the trustworthiness of a statement, "The strictures of Rule 804(b)(3) cannot be satisfied by a showing of speculative possibilities, but, rather, demand meaningful corroboration of proffered testimony." <u>United States v. Bradshaw</u>, 281 F.3d 278, 286 (1st Cir. 2002). The requirement for corroboration goes "beyond minimal corroboration". Id.

Here, Weekes did not established that Brown was unavailable at trial, and has made no showing that Brown's purported statement is trustworthy. Concerning unavailability, as noted above, there is no credible evidence that Weekes did <u>anything</u> to procure Brown's attendance at trial, only Weekes' self-serving, unsworn, uncorroborated assertions. Moreover, as also noted above, Weekes didn't even serve, or attempt to serve, a subpoena, on Brown, much less take any other obvious steps to secure Brown's attendance or establish his unavailability. (See above, at pp.7-9). If Weekes' purported efforts are sufficient to establish Brown's unavailability, any criminal defendant could demonstrate unavailability by mere unsworn, uncorroborated, self-serving assertions that he tried to contact a particular witness, but was unsuccessful. Because there is no credible evidence that Weekes did anything to procure Brown's attendance at trial, much

14

less make good faith, genuine, bona fide, non-perfunctory efforts ,including more than a subpoena, Brown's statement is not admissible. <u>Mann</u>, 520 F.2d at 367, and cases cited.

Concerning the trustworthiness of Brown's purported statement, as noted above, there exists no corroboration of Brown's alleged statement. (See above, at pp.9-13). Simply stated, there is not a shred of evidence establishing the occurrence, or content, of Brown's statement other than Weekes' self-serving, unsworn claim. It is hard to imagine a more untrustworthy statement than the unsworn, completely uncorroborated statement of a criminal defendant that someone (whom he says he can't find) told him that he, not the defendant, committed the crime. Consequently, Brown's alleged statement is not admissible pursuant to Rule 804(b)(3). <u>Bradshaw</u>, 281 F.3d at 286.

## IV. Weekes Should Not Be Resentenced

Weekes' seeks to be resentenced pursuant to 28 U.S.C.§ 2255 (see his motion at pp.19-20). His request is without merit and should be denied. First, as a matter of procedure, it is the general rule that the district court should not consider a Section 2255 motion while an appeal is pending in the absence of extraordinary circumstances. <u>United States v. Gordon</u>, 634 F.2d 638 (1st Cir. 1980); <u>United States v. Rangel</u>, 2008 WL787114 (10th

15

Cir. 2008); <u>United States v. Dunham</u>, 240 F.3d 1328, 1329 (11th Cir. 2001); <u>United States v. Barger</u>, 178 F3d 884,848, (7th Cir.2001). Here, Weekes' notice of appeal of his conviction was filed on July 18,2007. On March 19,2008, on Weekes' motion, the Court of Appeals For the First Circuit stayed appellate proceedings until the district court adjudicates the motion for new trial. See Order Of Court entered March 19, 2008. Because any possible grounds for resentencing are the appropriate subject of direct appeal, and because no extraordinary circumstances are present, Weeks' request for resentencing should be denied on this ground alone.

Weekes' request to be resentenced should also be denied on the merits. He claims that he should not have been sentenced as an Armed Career Criminal ("ACC") pursuant to 18 U.S.C.§ 924(e) because his prior convictions for assault and battery do not qualify as ACC predicates. Defendant's Memorandum at pp. 2-3,19-20. Weekes' claim is without merit. As even Weekes acknowledges (see his Memorandum at p.3), his argument is contrary to the established law in this Circuit. See <u>United States v. Holloway</u>, 499 F.3d 114 (1st Cir. 2007)(prior convictions under Massachusetts law for assault and battery constitute violent felony convictions for purposes of the Armed Career Criminal

16

Act)[5].

## Conclusion

For the aforementioned reasons, Weekes' motion should be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  /s/Christopher F. Bator
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served by electronic filing upon all counsel of record.

/s/Christopher F. Bator
Assistant U.S. Attorney
Date: April 25, 2008

---

[5] Weekes also argues, citing United States v. Birkett, Cr. No.06-10139-WGY (D. Mass. August 21, 2007), that his prior conviction for resisting arrest does not qualify as crime of violence. Defendant's Memorandum at pp. 19-20. His argument is misplaced. Birkett makes no reference to the crime of resisting arrest. Moreover, it is well settled that "convictions for resisting arrest are considered convictions for 'crimes of violence'". United States v. Marsh, 486 F.Supp.2d 150 (D.Mass. 2007) citing United States v. Wardrick, 350 F.3d 446, 455 (4th Cir. 2003).