UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

```
                              )
UNITED STATES OF AMERICA,     )
                              )
         Plaintiff,           )
                              )   Criminal Action
v.                            )   No. 04-10385-MEL
                              )
JEROME WEEKS,                 )
                              )
         Defendant.           )
                              )
```

BEFORE THE HONORABLE MORRIS E. LASKER
SENIOR UNITED STATES DISTRICT JUDGE

DISPOSITION

John J. Moakley United States Courthouse
Courtroom No. 8
One Courthouse Way
Boston, Massachusetts  02210
Wednesday, July 11, 2007
11 a.m.

Marcia G. Patrisso, RMR, CRR
Official Court Reporter
John J. Moakley U.S. Courthouse
One Courthouse Way, Room 3510
Boston, Massachusetts  02210
(617) 737-8728

Mechanical Steno - Computer-Aided Transcript

PDF created with pdfFactory trial version www.pdffactory.com

1    APPEARANCES:

2        OFFICE OF THE UNITED STATES ATTORNEY
         By: Christopher F. Bator, Assistant U.S. Attorney
3        John Joseph Moakley Federal Courthouse
         One Courthouse Way
4        Boston, Massachusetts  02210
         On Behalf of the Government

5
         LAW OFFICE OF J. THOMAS KERNER
6        By: J. Thomas Kerner, Esq.
         343 Commercial Street - Unit 104
7        Boston, Massachusetts  02109
         On Behalf of the Defendant

8
    In Attendance:  Jesse Gomes, U.S. Probation Office
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2            (The following proceedings were held in Judge

 3    Lasker's chambers:)

 4            THE COURT:  I received, as I guess everybody

 5    knows -- except I didn't know it myself until this

 6    morning -- a motion from the defendant for release

 7    pending appeal based on the question of whether a

 8    conversation with an individual named Kevin Brown should

 9    have been admitted or not --

10            Am I correct?

11            MR. KERNER:  Yes.

12            THE COURT:  -- as part of the evidence which

13    would, if admitted, allegedly have been favorable to the

14    defendant.

15            You haven't had an opportunity to answer this

16    yet, have you?

17            I'm addressing the United States Attorney.

18            MR. BATOR:  No, your Honor.  I've only -- I

19    think I saw it for the first time yesterday.

20            THE COURT:  I saw it for the first time this

21    morning, which is very troublesome.

22            MR. KERNER:  I would not necessarily be seeking

23    a hearing on that motion today.  I just wanted it to be

24    filed, and then at an appropriate time in the future,

25    after the government has a chance to respond, have a
```

1  hearing.

2          THE COURT:  All right.  In other words, we'll

3  proceed with sentencing today?

4          MR. KERNER:  Yes.

5          THE COURT:  But you would ask to preserve the

6  right to have me review the situation of whether he

7  should be released from custody pending appeal after the

8  government has answered the motion?

9          MR. KERNER:  Yes.  Yes.

10          MR. BATOR:  Preliminarily, I guess it troubles

11  me, is the right word, too, to receive these motions so

12  close to the event.  My first reaction, your Honor, is

13  that the motion should be stricken because it's based

14  entirely on, essentially, assertions --

15          THE COURT:  Yeah.  Well --

16          MR. BATOR:  -- of counsel.

17          THE COURT:  -- I don't need you to answer at the

18  moment.

19          MR. BATOR:  But one relevant consideration is

20  that I also received at the same time notice of appeal.

21  And I think this -- which is -- I just saw Mr. Kerner

22  this morning, and I haven't had a chance --

23          THE COURT:  I think a notice of appeal is

24  premature.

25          MR. BATOR:  I think it's premature, too,

PDF created with pdfFactory trial version www.pdffactory.com

1   although I assume after the Court imposes sentence,

2   assuming we go forward today, I anticipate he'll file a

3   motion for appeal.  But at that point isn't the Court

4   absent jurisdiction with regard to all these matters?  I

5   think one of the issues with regard to this motion is

6   that it's -- it may be properly the subject matter of an

7   appellate argument.

8          THE COURT:  Well, I'm not asking you to take a

9   position on those questions at the moment.  I'm

10  satisfied defense counsel states to me that he does not

11  intend to ask for relief with regard to this motion

12  today.

13          MR. KERNER:  No; I just wanted it filed.

14          THE COURT:  I'm ready to proceed to sentencing.

15          MR. KERNER:  Thank you.

16          (Proceedings in chambers concludes.  There is a

17  recess in the proceedings at 11:18 a.m.)

18          (In open court:)

19          THE CLERK:  All rise.

20          Hear ye, hear ye, hear ye, all those having

21  business before the United States District Court for the

22  District of Massachusetts draw near, give your

23  attention, you shall be heard.  Court is now in session.

24          THE COURT:  Good morning, everyone.

25          COUNSEL IN UNISON:  Good morning, your Honor.

1          THE CLERK:  This is Criminal 04-10385, United

2     States of America versus Jerome Weeks.

3          Will the attorneys please identify themselves,

4     and who they represent, for the Court.

5          MR. BATOR:  Good afternoon, your Honor.

6     Christopher Bator for the United States.

7          THE COURT:  Good afternoon, Mr. Bator.

8          MR. KERNER:  Tom Kerner for Mr. Weeks, your

9     Honor.

10          THE COURT:  Good morning, Mr. Kerner.

11          Before I call on Mr. Kerner, who represents Mr.

12     Weeks, and before I call on Mr. Weeks, I'll give the

13     government an opportunity to express any views they have

14     with regard to the sentencing, if you wish to do so.

15          MR. BATOR:  I do, your Honor.  Would the

16     government like to hear what the government's -- would

17     the Court like to hear what the government's

18     recommendation and what the basis for it is at this time

19     or did you want to go through the guideline provisions

20     first?

21          THE COURT:  I'm sorry?

22          MR. BATOR:  Would the Court like to hear from

23     the government with regard to its recommendation and

24     basis for it at this time or did the Court --

25          THE COURT:  Yes, I would.

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. BATOR:  Okay.  Does the Court intend, if I

2     may ask, to go through the guidelines issues

3     subsequently?

4          THE COURT:  I'm satisfied with the guidelines,

5     if correctly applied in this case, if you'd like to know

6     that.  But I would like to hear what the government's

7     view is.

8          MR. BATOR:  Again, forgive me for -- because

9     there are some objections, your Honor.  I believe just

10    as a matter of record we'll have to --

11         THE COURT:  State your position.

12         MR. BATOR:  On behalf of the government?  I'm

13    happy to, your Honor.

14         The government's recommendation is for guideline

15    sentence, a sentence at the low end of the guideline,

16    which the applicable guideline the government believes

17    is 235 months to 293 months.  The government seeks a

18    sentence at the low end of that guideline, a 235-month

19    sentence of incarceration, five years of supervised

20    release, the $100 mandatory special assessment.

21         With regard to the fine, the government is in a

22    bit of a quandary because the presentence report

23    indicates that the defendant has not submitted and has

24    not -- and has been unwilling to provide requested

25    financial information.  So as the probation officer in

1    the presentence report has indicated, there's no

2    indication of inability to pay a fine.

3          The government believes it's seeking a very

4    significant sentence here and does not wish to be

5    heavy-handed, but in the absence of that information is

6    a little bit at a loss of what to request and believes

7    that some -- absent that information, which a defendant

8    is required to provide to the probation office,

9    particularly to indicate if there's an inability to pay

10   a fine -- that absent the provision of that information

11   some fine, given the seriousness of the charges here and

12   the complete record of the defendant, would be

13   appropriate.

14         But the government would defer to the Court with

15   regard to what is appropriate, but its position is:

16   Absent that information, some fine would be appropriate.

17         THE COURT:  I hear you.

18         MR. BATOR:  With regard to the basis for the

19   government's recommendation, the government recognizes

20   that it is asking for a very significant sentence here.

21   And particularly in view of the 15-year minimum

22   mandatory and the guideline range -- armed career

23   criminal guideline range here -- is somewhat above the

24   15-year minimum mandatory.

25         The guideline range is approximately 19 and a

PDF created with pdfFactory trial version www.pdffactory.com

1    half years to approximately 24 and a half years.  And

2    the government is asking for the 235 months, the low end

3    of that guideline.

4         The government feels very strongly that a

5    guideline sentence is appropriate in this case.

6    Entirely appropriate.  And the reason for that is what

7    is an established, extensive record of criminal behavior

8    involving significant violence and drug trafficking of

9    the defendant over a very long time.

10        The one thing that I should say honestly, your

11   Honor, that troubles the government to some extent is

12   that throughout the tone of the defendant's filings, the

13   defendant's own letter, there's a suggestion that, as

14   the defendant says in his letter, I'm not the bad guy,

15   the prosecutor -- he says the ADA -- the prosecutor

16   makes me out to be.

17        And the suggestion is the record isn't very

18   significant, it's minimal; if he qualifies as an armed

19   career criminal, it's only just barely.  And that is

20   absolutely not the case.  The defendant has, depending

21   on how you count, four or five armed career criminal

22   predicates.  He's not barely qualifying, he's adequately

23   qualifying.  He has a criminal history score of -- the

24   PSR indicates it's 19 points.  I spoke with Mr. Gomes

25   having noticed -- this morning, having noticing

1  something last night.  I think the accurate number is 21

2  points because he gets two additional points for

3  having -- under Sentencing Guideline 4A.1.1(d) for

4  having committed the instant crime while under

5  supervision of another sentence.  And I'd refer the

6  Court to Paragraph 4 of the conviction, Paragraph 48.

7  If that's true, and I believe Mr. Gomes concurs with

8  that, for purposes of his arguments, he would have 21

9  points.

10       There's a First Circuit case, *Brown*, your Honor,

11 *United States v. Brown*, 899 F.2d 94, which holds that a

12 significant -- a criminal history score significantly

13 above the 13 points which qualifies you for Category VI

14 is, itself, a basis for an upward departure.  *Brown* is

15 the case where the criminal -- the defendant had 20

16 points.  And in the language in *Brown* the Court -- the

17 First Circuit says that is off the charts and qualifies

18 as an appropriate basis for an upward departure from the

19 guideline.

20       The government isn't seeking an upward departure

21 from the guideline; the government is seeking a low-end

22 guideline sentence.  But I think that's more evidence

23 that his record is very significant.  And I'd like to

24 spend a second detailing it because I think the record

25 should appropriately reflect that, and I want to make

PDF created with pdfFactory trial version www.pdffactory.com

1  sure I can draw the Court's attention to it.

2      Beginning at age 16 through the present there

3  are just continual, repeated convictions for assault and

4  battery, assault and battery with a dangerous weapon,

5  resisting arrest, distributing cocaine.  The record is

6  persistent --

7      THE COURT:  It's considerable.

8      MR. BATOR:  -- and elaborate.

9      And it is entirely consistent with the crime of

10  conviction in this case, and it is, it seems to me,

11  entirely consistent with the behavior of the defendant

12  when he did not show up for sentencing having been

13  given, in the government's view, a considerable break to

14  be allowed to be out pending sentencing, facing such a

15  large sentence, that he absconded and --

16      THE COURT:  Right.

17      MR. BATOR:  -- was found with what the

18  government believes are the trappings and tools of a

19  dangerous criminal.  He was found with two loaded

20  weapons -- two loaded 9-millimeter -- fully-loaded

21  9-millimeter weapons -- and five false identity papers

22  including a birth certificate, a social security card, a

23  credit card and a couple of others in another name

24  bearing some of the -- a Georgia driver's license

25  bearing his picture in another name.  Those are the

PDF created with pdfFactory trial version www.pdffactory.com

1    tools of an armed career criminal, your Honor.  And I

2    believe that is the picture that his record

3    appropriately presents.

4          I think the other thing I'd point on briefly is

5    I do believe that the defendant perjured himself during

6    his trial.  I think that was the jury's determination.

7    The case essentially came down to a credibility contest

8    between the defendant and the police officers; in

9    particular, Officer Darrah.

10         And I think the defendant came in here and

11   told -- and lied to the Court and lied to the jury with

12   regard to this -- what the government believes was this

13   fairytale about the other car -- the Court will remember

14   from the trial -- with the man in the Red Sox shirt who

15   there had been an interaction -- previous interaction

16   with in the bar, driving not down this alleyway toward

17   the -- purportedly toward the defendant, Mr. Brown,

18   firing a gun and then either dropping or leaving a

19   loaded gun for the defendant to -- Mr. Brown to find.

20   And the defendant says that happened and of course he

21   didn't pick up the gun, Mr. Brown did, and he was

22   unaware of this.

23         The notion that they would be running -- it's

24   undisputed the defendants were running in the direction

25   of this car -- them running in the direction of someone

PDF created with pdfFactory trial version www.pdffactory.com

1    who was firing shots at them is, among other things,

2    part of what the government believed was a fairytale and

3    was bald-face lies in front of the Court and in front of

4    the jury, for which the government believes the

5    defendant deserves a two-point obstruction enhancement.

6    The enhancement already applies, as the PSR indicates,

7    as a result of the absconding at the time of sentencing.

8    But I think that is consistent with this picture of the

9    defendant.

10         I intended to go on longer but I think the Court

11   understands the government's position.

12         THE COURT:  I think you've adequately covered

13   it.

14         MR. BATOR:  Thank you, your Honor.

15         THE COURT:  Thank you, sir.

16         Mr. Kerner?

17         MR. KERNER:  Thank you, your Honor.

18         Your Honor, I filed a sentencing memorandum, and

19   in that memorandum I indicated that I believed that the

20   criminal history category was overstated by the

21   probation department, and that for the reasons stated in

22   my memorandum that he is -- he should be assessed 17

23   criminal history points, which still puts him into

24   Category VI.

25         I further stated that I believe that if you look

1    at the nature of his prior convictions, they were all

2    convictions which resulted in either a probationary

3    sentence or a relatively short time in a county house of

4    correction.

5           My argument was that a Level VI is the worst

6    category that you can be put into under the guidelines,

7    and I suggested that even though Mr. Weeks does have a

8    fairly substantial prior criminal history, that it is

9    far from being the worst that comes through these

10   courthouse doors.

11          The main argument, your Honor, is really whether

12   or not the assault and battery in Somerville, and

13   possibly the resisting arrest in Brockton, are violent

14   felonies for purposes of the ACC.  And they aren't for

15   two reasons:  One, they are state misdemeanors,

16   punishable by two years or less, so they are excluded

17   under the statute; and, two, they are -- there is

18   nothing in the -- there's nothing before the Court

19   admissible under *Shepard* which would indicate that

20   either resisting arrest or the assault and battery were

21   violent felonies; they were just generic assault and

22   battery, generic resisting arrest.

23          And there are two ways in which both of those

24   crimes can be committed; both of those crimes can be

25   committed without violence.  And there's nothing to

PDF created with pdfFactory trial version www.pdffactory.com

1    indicate -- there's nothing before this Court that is

2    admissible under *Shepard* to show that it was committed

3    in a way that was violent.

4         The police reports are not admissible; there are

5    no plea colloquies; there is -- I've been provided with

6    no charging documents which indicate that there was

7    violence associated with either one of these crimes.  So

8    you cannot consider them violent felonies, I would

9    suggest, based on *Shepard,* and pursuant to the statute

10   they are not violent felonies and they cannot be ACC

11   predicates.  Even if there is something in there which

12   indicates there was some threat of force or force used,

13   they are still state misdemeanors punishable by two

14   years or less; and, thus, they are excluded from the ACC

15   pursuant to the statute.

16        My argument, your Honor, is that you should

17   consider the guidelines at Offense Level 24, and

18   criminal -- the guideline should be criminal Category

19   VI, Offense Level 24.  And my suggestion is that given

20   that even though there are sufficient points to place

21   Mr. Weeks into Category VI, because of the nature of

22   most of those convictions -- I would suggest that only

23   the two drug charges are felonies -- that it would be

24   appropriate to depart from the guidelines by one

25   criminal history category to Criminal History Category

PDF created with pdfFactory trial version www.pdffactory.com

1   V, and that would put him into a situation where the

2   guideline range is 92 to 115 months.

3          Now, Judge, this was a conviction which Mr.

4   Weeks is appealing.  This is a conviction that was

5   returned by a jury -- an all-white jury that was chosen

6   under a system that has now been revamped by this court.

7   It was objected to at the time of the impaneling; I

8   objected to the fact that the whole panel consisted of

9   no African-Americans and I asked for a new panel, and

10  that was denied.

11         Since that time this court, the district court,

12  has revamped its procedures for calling people for jury

13  duty to get a more representative racial mix of the jury

14  panels.

15         THE COURT:  Right.

16         MR. KERNER:  And so if it was not a fair -- he

17  was not convicted under a fair jury-picking system

18  because if it was fair, they would have kept it that

19  way.  It wasn't fair then -- and it may be fair now, but

20  it wasn't fair then.  And we objected to that.  And he

21  was convicted by an all-white jury and he was convicted

22  by lying white police officers.

23         And we know that they were lying because we have

24  a transcript of one police officer from a motion to

25  suppress hearing before you where he sat right over

PDF created with pdfFactory trial version www.pdffactory.com

there, and the police officer, whose name is Healy, said
that Darrah, the main police officer, told Healy on the
night of the incident that Mr. Weeks jumped over the
short six-foot fence with the barbed wire.  And then he
came into court and he lied.  He lied to the jury, he
lied to you, he lied to everybody, and he said that
Darrah told him that he jumped over the eight-foot fence
into that little pen area where the gun and the phone
were found.

     And he said that after he was spoken to by the
U.S. Attorney's Office.  And his excuse was, "Oh, I was
confused."  He was not confused because -- I have the
transcript right here.

     THE COURT:  We're not retrying the case.

     MR. KERNER:  I'm not retrying the case but I'm
pointing out to you that this was an issue that you have
to take into consideration.

     THE COURT:  Not with regard to sentencing.  If
the defendant is not guilty, that's one thing; but if
he's guilty, then I have to decide what's an appropriate
sentence.  And that doesn't depend on the issues that
you're now talking about.  The other ones, it does.

     MR. KERNER:  Yes.  Well, the government claims
that it's their opinion that Mr. Weeks lied during the
trial.  Well, that's the government's opinion.  We have

PDF created with pdfFactory trial version www.pdffactory.com

1   proof that the government lied.

2        THE COURT:  I don't -- come on.  Calm down.  I

3   don't accept the government's, quote, opinion either.

4        MR. KERNER:  Thank you, your Honor.  I'll move

5   on.  I appreciate that.

6        If this case were properly brought in the

7   Brockton District Court where it belonged, he would be

8   facing a one-year minimum mandatory for possession of a

9   gun -- if he was convicted -- possession of a gun

10  without a license.  That's what the punishment is in the

11  state court.

12        THE COURT:  Well, your complaint there is with

13  the executive or the Congress, not with me.

14        MR. KERNER:  Yes.  And this is my argument for a

15  departure, all right?

16        THE COURT:  It's not a recognized argument for

17  departure.

18        MR. KERNER:  It could be.

19        THE COURT:  The fact that a penalty would be

20  less in the state system is not a recognized argument

21  for departure.  And I'm a great departer, I'll tell you.

22        MR. KERNER:  But if you take into consideration

23  the circumstances under which this case got here it may

24  be.  Because what happened that night is Mr. Weeks and

25  Mr. Kelvin Brown were both charged with possessing that

1    gun.

2           Mr. Kelvin Brown's case -- it wasn't a situation

3    where the police didn't know what happened and then a

4    couple of hours later, or a couple of days later, even

5    weeks later, hashed things out, dismissed Kelvin Brown

6    and prosecuted Mr. Weeks.  What happened is that they

7    figured out that they could get 15 years from Mr. Weeks

8    and not from Mr. Brown, and that's why the case was

9    brought here.

10          MR. BATOR:  I'm going to object, your Honor.

11          THE COURT:  It would be a perfectly good reason

12   for bringing it here.  I have nothing to do with that,

13   and you know that.

14          MR. KERNER:  I know that you have nothing to do

15   with it.

16          THE COURT:  It is nothing that is appropriate

17   for me to consider.

18          MR. KERNER:  Thank you, your Honor.

19          THE COURT:  Would you please get to your

20   recommendation?

21          MR. KERNER:  My recommendation is that since

22   this is a situation where if the case was brought in

23   state court, he was facing here, I'm asking for a

24   three-year sentence; I'm asking for 36 months, which is

25   a considerable sentence.

1          THE COURT:  It's perfectly justifiable for you

2     to ask for anything you want to, but you know very well

3     that that's not going to fly with the Court of Appeals.

4          MR. KERNER:  Then at the very least, your Honor,

5     I believe that you should determine that Mr. Weeks is

6     not an ACC, he does not qualify for the ACC, and that

7     his guidelines should be 24/VI, and that you would be --

8     it would be appropriate for you to depart one level on

9     the criminal history category, from VI to V.  And under

10    24/V, the guidelines are 92 to 115 months.  And I would

11    ask that you -- then if you are not going to depart

12    further, then 92 months.

13         THE COURT:  Thank you very much.

14         MR. KERNER:  Thank you.

15         MR. BATOR:  Your Honor, may I be heard just for

16    the record?

17         THE COURT:  No.  Nothing further.  I've heard

18    enough.  I'm ready to proceed.  Please be seated.

19         MR. BATOR:  Your Honor, for the record above, I

20    need to responds to his ACC arguments if only to say the

21    government has previously filed a memorandum and that

22    its position with regard to his argument whether what

23    qualifies as an ACC predicate or not, and that

24    memorandum indicates it's been rejected by the First

25    Circuit.

PDF created with pdfFactory trial version www.pdffactory.com

1          I need to say that for the record for above,

2  your Honor, or we'll be back here.

3          THE COURT:  I understand.

4          Mr. Weeks, do you want to stand?

5          (Defendant rises.)

6          THE COURT:  Mr. Weeks, here we are all gathered

7  together because of your case.  It's a pretty heavy

8  moment for you, it's a pretty heavy moment for me, too.

9  You can tell me anything you want before I go ahead and

10  impose a sentence.  I have to impose a significant

11  sentence here, and you know it.  And I'd like to hear

12  what you have to say before I do it.

13          THE DEFENDANT:  All right.  First I want to say

14  I'm sorry for not showing up for sentencing.  The reason

15  why I didn't show up was because my father was sick and

16  I had to take care of my little sisters.  And I was

17  having a little baby girl.

18          I'm 27 years old with two beautiful little girls

19  that I want to see grow up.  I'm older now and I know

20  right from wrong.  I know if I had another chance, I

21  would stay out of trouble and do the right thing.

22          While I was on release I never did any drugs or

23  drink, I took things serious because I wanted to stay

24  out.  The longest time I ever did in jail was 10 months;

25  I never did any longer time than that.

1          I'm asking the Court for mercy, to justify *[sic]*

2     a lenient sentence.  Thank you.

3          THE COURT:  Well, Mr. Weeks, I'm going to have

4     to go through a little arithmetic, for the record, to

5     explain why I'm imposing the sentence that I am imposing

6     and so on.  There's been argument between counsel as to

7     how you calculate all this stuff.  But let me just say

8     that I adopt the calculations made in the presentence

9     report by the probation department here, and find that

10    there is a base offense level of 24, with 2 added as an

11    adjustment for obstruction of justice and failure to

12    appear for sentencing, an adjusted offense level of 26.

13         And I conclude with regret, but nevertheless

14    firmly, that the defendant is subject to the armed

15    career criminal provision described at 18 U.S.C. Section

16    924(e) and the guidelines accordingly; second, I

17    conclude that you have three prior convictions for a

18    violent felony or a serious drug offense or both,

19    committed on occasions different from one another; and

20    that the total offense level is then 33.

21         Against you, to get back to plain English now,

22    is the nature of what you did:  Possessing a firearm

23    after having been convicted of a felony; together with a

24    considerable prior record commencing when you were only

25    16 including assault and battery; attempted larceny on a

PDF created with pdfFactory trial version www.pdffactory.com

1   person resulting in a jail sentence; assault and battery

2   at age 18 for which a sentence was imposed; a further

3   assault; knowingly receiving stolen property for which

4   you received a jail sentence in 1998; sale of cocaine at

5   the age of 19 where you were sentenced; possession of

6   cocaine, the one-year committed deemed served; and

7   battery and resisting arrest in Miami, Florida, in 2002.

8        Now, according to the calculations of the

9   probation department, which I believe to be correct, in

10  this case the guideline range is 235 to 293 months.  The

11  statutory minimum is 15 years to life.  This is one of

12  those rare cases in which the guideline minimum is well

13  above the statutory minimum and in which both such

14  sentences are substantial and long.

15       I conclude that to impose a sentence of not less

16  than 235 months, which is the guideline minimum, would

17  be excessive within the meaning of 18 United States Code

18  3553(a).  Accordingly, I impose the following sentence:

19  Pursuant to the Sentencing Reform Act of 1984, and

20  having considered the sentencing statute enumerated at

21  18 U.S.C. Section 3553(a), it's the judgment of the

22  Court that the defendant, Jerome Weeks, is hereby

23  committed to the custody of the Bureau of Prisons, to be

24  imprisoned for a term of 180 months, which is the

25  statutory minimum.

1          The Court makes the judicial recommendation that

2     the defendant participate in anger management or

3     batterer's counseling, if available, at the designated

4     Bureau of Prisons' facility.

5          Upon release from imprisonment, the defendant

6     shall be placed on supervised release for a term of

7     three years.  Within 72 hours of release from custody of

8     the Bureau of Prisons, you shall report in person to the

9     district in which you were released.

10         No fine is imposed based on the Court's finding

11    that there is no evidence of your ability to pay a fine

12    or that you are likely to become able to do so.

13         While on supervised release you shall comply

14    with the following conditions:  You shall not commit

15    another offense; you shall refrain from any unlawful use

16    of a controlled substance and submit to one drug test

17    within 15 days of release from imprisonment, at least

18    two periodic tests thereafter, not to exceed 104 tests

19    per year; you shall submit to the collection of a DNA

20    sample; you shall comply with the standard conditions as

21    has been adopted by the Court which are described in the

22    guidelines, Section 5D1.3(c); and you're prohibited from

23    possessing a firearm or other dangerous weapon.

24         It is further and finally determined that you

25    shall pay to the United States a special assessment of

PDF created with pdfFactory trial version www.pdffactory.com

1  $100, which shall be due.

2        Now, Mr. Weeks, I've gone down as far as it's

3  possible for me to go, and it's still a very tough

4  sentence, I realize.  I don't write the laws; I'm

5  obligated to impose a sentence as the laws are imposed

6  on me.  You will get time off each year for good

7  behavior, if you behave well, and that will reduce the

8  sentence by a number of years, although it's still going

9  to be long.

10        You will still, however, not be an old man when

11  you come out, and I hope and believe and wish that

12  things will turn around for you and for society and for

13  your friends and family who are here today, all of whose

14  letters I received and read and care about.  But they

15  must know that I'm not just free to do anything I wish.

16        I want to tell you that you have the right to

17  appeal both your conviction and your sentence.  You have

18  significant reasons to appeal your conviction because

19  you have a question of suppression of evidence and other

20  issues raised by your attorney.

21        I assume that counsel will arrange to file a

22  notice of appeal forthwith.  Am I correct in that

23  regard?

24        MR. KERNER:  Yes, your Honor.

25        THE COURT:  Very good.

1        MR. GOMES:  Your Honor, perhaps I missed it.

2  What term of supervised release did you wish to impose?

3        THE COURT:  Excuse me.  I thought I did.

4        MR. BATOR:  I believe the Court indicated three

5  years.

6        THE CLERK:  Three years.

7        MR. GOMES:  Three years?  All right.

8        THE COURT:  Yes.  A three-year term of

9  supervised release.

10        That concludes the proceedings for today, and

11  I --

12        MR. BATOR:  Your Honor, I need to state -- to be

13  heard very briefly as a matter of form for the appellate

14  court.  I need to state an objection to the sentence for

15  the basis that it's below the minimum mandatory.

16        I should also point out that pursuant to Federal

17  Criminal 32 and United States -- the Supreme Court of

18  the United States, *Burns -- United States v. Burns,* 501

19  U.S., 135,136, the Court is -- the parties are required

20  to give some notice of a sua sponte deviation from the

21  guidelines.

22        I assume this is -- the Court indicated this is

23  not a departure but a deviation under the 35 --

24        THE COURT:  That's correct.

25        MR. BATOR:  -- because -- it's part of what the

1    rule requires in order to give the parties full

2    opportunity to comment on the basis for the sentence.

3            THE COURT:  What section are you referring to?

4            MR. BATOR:  I'm sorry?  Yes.  Rule -- it's

5    Federal Criminal Rule 32(i)(1)(C) which --

6            THE COURT:  Excuse me.

7            MR. BATOR:  -- mandates that the district court

8    allow parties to comment on -- relating to appropriate

9    sentence, in the *Supreme Court v. Burns*, in providing a

10   guideline --

11           THE COURT:  Just give me a chance to look, will

12   you?  You're going too fast for me.  32(i)(1)(C)?

13           MR. BATOR:  Yeah.  32(i)(1)(C).

14           THE COURT:  It's some system.

15           MR. BATOR:  The Court indicated -- I didn't

16   invent it myself, your Honor.

17           THE COURT:  Are you referring to the phrase

18   which says "must allow the parties' attorneys to comment

19   on the probation officer's determinations and other

20   matters relating to an appropriate sentence"?

21           MR. BATOR:  Yes.  As it's been construed by the

22   Supreme Court in the *Burns* case, your Honor, which has

23   indicated that the parties -- gives the parties some

24   right to be notified that the Court is contemplating

25   what a sentence will be in order to give full comment.

1      THE COURT:  I'm amazed that in my 39 years on

2  the bench, but in my 13 years here in Boston, this has

3  never been brought to my attention before.  If you wish

4  to start from scratch today, go ahead and give me your

5  position.

6      MR. BATOR:  Well, I think it's more to -- all

7  the Court is saying, and I should add that the office --

8  the assistant U.S. attorneys are routinely making this

9  objection so that when we come into court we have some

10 idea of what to argue -- with regard to what the Court

11 may be thinking.  All the Court has said this morning is

12 that the guideline sentence, even at the low end, which

13 the government -- is excessive, and nothing more.

14     THE COURT:  That is a word that was used in a

15 recent commutation of sentence also.

16     MR. BATOR:  No.  No.  And I don't suggest that

17 there's anything inappropriate about that.  But it's

18 very limited in citing -- for the government to have

19 some sense of why the sentence is excessive and then to

20 be able to respond in some sense, is what would fulfill

21 I think, what the requirements of the rule and *Burns*

22 say on --

23     THE COURT:  I'd be glad to hear anything that

24 you wish to tell me as to why it is not excessive.

25     MR. BATOR:  Well, I think the government has

PDF created with pdfFactory trial version www.pdffactory.com

1  made its arguments with regard to that, your Honor.

2          THE COURT:  That's what I thought.  I heard you

3  all.  I don't know what more can be done.

4          MR. BATOR:  Well, I think having some

5  understanding of why the Court --

6          THE COURT:  You have the right to appeal, too.

7          Thank you, everyone.

8          MR. KERNER:  Thank you, your Honor.

9          THE CLERK:  All rise.

10          Court is now in recess.

11          (The proceedings adjourned at 11:54 a.m.)

12

13                  C E R T I F I C A T E

14

15          I, Marcia G. Patrisso, RMR, CRR, Official

16  Reporter of the United States District Court, do hereby

17  certify that the foregoing transcript constitutes, to

18  the best of my skill and ability, a true and accurate

19  transcription of my stenotype notes taken in the matter

20  of Criminal Action No. 04-10385-MEL, United States v.

21  Jerome Weeks.

22

23                      /s/ Marcia G. Patrisso
                        MARCIA G. PATRISSO, RMR, CRR
24                      Official Court Reporter

25